## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| IOWA ASSOCIATION OF BUSINESS AND INDUSTRY, | ) ) ) |
| IOWA BANKERS BENEFIT PLAN, | ) ) ) |
| IOWA LABORERS DISTRICT COUNCIL HEALTH AND WELFARE FUND, | ) ) ) ) |
| DES MOINES ORTHOPAEDIC SURGEONS PC, | ) ) ) |
| and | ) ) |
| IOWA SPRING MANUFACTURING & SALES COMPANY, | ) ) ) |
| *Plaintiffs,* | ) ) ) |
| v. | ) ) ) |
| DOUG OMMEN, in his official capacity as Insurance Commissioner of Iowa, | ) ) ) |
| *Defendant.* | ) ) |

No. 4:25-cv-211

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs Iowa Association of Business and Industry, Iowa Bankers Benefit Plan, Iowa Laborers District Council Health and Welfare Fund, Des Moines Orthopaedic Surgeons PC, and Iowa Spring Manufacturing & Sales Company hereby file this complaint against Defendant Doug Ommen, in his official capacity as Insurance Commissioner of Iowa, and allege as follows:

## **NATURE OF ACTION**

1.      This action challenges a newly enacted Iowa law that will raise healthcare costs for businesses across the state – large and small – by tens of millions of dollars.  Signed just days ago, the law will upend the prescription drug coverage that Iowans receive through their employers, even going so far as to suppress health benefit plans from communicating cost-saving information about one pharmacy over another.  Not only is the law preempted by the federal statute designed to prevent exactly this kind of heavy-handed state interference, but its speech restrictions – offering no legitimate public benefit – violate the First Amendment.

2.      Specifically, Plaintiffs seek an injunction halting enforcement of, and a declaration finding illegal, amendments to Title XIII, subtitle 1, Chapter 510B of the Iowa Code ("Regulation of Pharmacy Benefit Manager") [hereinafter "Chapter 510B"] contained in Senate File 383 ("SF 383") (Ex. 1 to this Compl.), which the Iowa Senate and House of Representatives passed on April 28, 2025 and May 12, 2025, respectively, and which Iowa Governor Kim Reynolds signed into law on June 11, 2025.

3.      The Iowa legislature openly intended SF 383 to help a narrow constituency – namely, rural retail pharmacies that it deemed threatened by national-chain and mail-order pharmacies and by the pharmacy benefit managers ("PBMs") with whom those chain and mail-order pharmacies sometimes are affiliated.  PBMs are intermediaries that assist health benefit plans, through contracts with them, in the provision of prescription drug benefits for covered individuals.

4.      But to accomplish their goals, Iowa lawmakers used a sledgehammer.  Under the auspices of amending a part of the Iowa Code addressed to PBMs, the legislature inaugurated sweeping regulation ensnaring the universe of entities potentially interfacing with pharmacies generally and affecting prescription drug benefits across the state.

5.      By its facial terms, SF 383 regulates health benefit plans themselves, their sponsors, their fiduciaries, their administrators, their service providers, and the persons covered under the health benefit plans.  It does so at great financial and logistical peril to them, with credible estimates placing the cost of SF 383's various measures at possibly over $300 million annually for the Iowa health-benefits-plan community.  It also does so notwithstanding that the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*., otherwise regulates comprehensively, uniformly, and largely exclusively the provision of health benefits for the majority of the state's, and the nation's, population.  SF 383 even goes so far as both to necessitate and to restrict commercial speech to further its objectives.  In brief, SF 383 adds far-reaching, draconian, and expensive new measures to existing Chapter 510B.  And it becomes effective almost immediately – *on July 1, 2025*.

6.      Most important, SF 383 is unlawful.  ERISA preempts multiple provisions of SF 383, and the First Amendment to the U.S. Constitution (as applicable to the states through the Constitution's Fourteenth Amendment) likewise invalidates portions of SF 383.  These illegal provisions cannot workably be severed from any remaining portions of SF 383.

7.      On these bases, Plaintiffs seek preliminary and permanent injunctions halting enforcement of SF 383 *in its entirety* and a declaration finding SF 383 unlawful *in its entirety*. Plaintiffs are Iowa's largest business association, comprising hundreds of Iowa employers that sponsor ERISA-governed health benefit plans for their employees, and two ERISA plans and two ERISA-plan sponsors hard-hit by SF 383.  Together, they seek to protect the healthcare coverage of affected Iowa workers from the Iowa legislature's costly trespass into an exclusively federal domain and violation of federal constitutional rights.

## **PARTIES**

8.     Plaintiff Iowa Association of Business and Industry ("ABI") has served as the Voice of Iowa Business since 1903.  With more than 600 members who, in turn, employ more than 300,000 persons, ABI is the largest business network in the state and has a long legacy of advocating for a competitive business climate in Iowa.  ABI represents its members in Iowa legislative matters by monitoring and advocating for policies and legislative proposals that allow member companies to offer cost-effective health care benefits for their Iowa company employees.  In 2025, ABI registered against SF 383, as introduced; it also advocated for amendment of the legislation to pertain only to provisions to assist small, independent pharmacies; and in 2025, ABI registered in favor of, and advocated for SSB 1207, an act relating to pharmacy benefit managers, pharmacies, and prescription drugs.  Additionally, ABI participates in litigation to further its members' interests, including previously bringing suit to sustain its members' preemption interests.  ABI's members, almost universally, sponsor for their employees ERISA-covered health benefits plans, both self-funded and insured, and many contract with PBMs or for PBM services to assist in their ERISA plans' administration.

9.     Plaintiff Iowa Bankers Benefit Plan ("IBBP"), formed in 1978, is a tax-exempt Voluntary Employee Beneficiary Association under Internal Revenue Code § 501(c)(9), is a Multiple Employer Welfare Arrangement ("MEWA") under ERISA, and holds a Certificate of Registration to conduct business in the State of Iowa.  IBBP partners with banks to provide competitive and comprehensive health and related benefits to the banks' employees and their dependents.  It primarily offers health benefits coverage in Iowa, with 10% enrollment in locations outside of Iowa.  IBBP contracts with Wellmark Blue Cross Blue Shield ("Wellmark") for third-party administration, including PBM services through Wellmark's contract with CVS

Caremark.  IBBP covers more than 9,300 employees and, with dependents, approximately 20,000 total lives.

10.     Plaintiff Iowa Laborers District Council Health and Welfare Fund ("Fund" or "Laborers Plan") is a self-funded Taft-Hartley welfare benefit plan governed by ERISA.  The Laborers Plan is administered by a joint Board of Trustees, one-half of whom are appointed by the Great Plains District Council of the Laborers International Union of North America ("Union") and one-half of whom are appointed by the Heavy Highway Contractors Association ("Association").  Participating employers make contributions to the Laborers Plan pursuant to collective bargaining agreements with the Union and Association.  The Laborers Plan uses these contributions to make benefit payments and to pay the administrative expenses of the Fund.  The Board of Trustees administers all provisions of the Laborers Plan.  Hospital and medical benefits are processed and paid through Wellmark.  Prescription drug benefits are processed and paid by the Fund's PBM, Sav-Rx.  The Laborers Plan covers 2,200 active participants and 550 retirees and, with dependents, a total of 5,700 lives, the majority of whom reside in Iowa.

11.     Plaintiff Des Moines Orthopaedic Surgeons PC ("DMOS") is a privately owned orthopedic practice with offices in several Iowa locations and with its principal place of business in West Des Moines, Iowa.  It has approximately 325 employees located in Iowa.  DMOS provides health benefits for its employees and their dependents.  Its health benefit plan is self-funded, and DMOS contracts with a third-party administrator for administrative services, including PBM services.  DMOS's health benefit plan covers approximately 150 employees and, with dependents, approximately 400 total lives.

12.     Plaintiff Iowa Spring Manufacturing & Sales Company ("Iowa Spring") is an Iowa corporation engaged in the manufacture of mechanical coil springs to supply to the

agricultural and overhead garage-door industries.  Its principal place of business is Adel, Iowa,

with satellite manufacturing facilities in North Carolina and Pennsylvania.  Iowa Spring has

approximately 210 employees, with approximately 130 located in Iowa.  It provides health

benefits to its employees through a fully insured plan underwritten and administered by

Wellmark, which includes PBM services through Wellmark's contract with CVS Caremark.

Iowa Spring's health benefit plan covers approximately 175 employees and, with dependents,

approximately 300 covered lives, the majority of whom are located in Iowa.

13.     Defendant Doug Ommen is the Insurance Commissioner ("Commissioner") for

the State of Iowa.  The Commissioner's principal place of business is 1963 Bell Avenue, Suite

100, Des Moines, Iowa 50315.  The Commissioner is being sued solely in his official capacity.

14.     Defendant and those subject to his supervision, direction, or control are

responsible for enforcing Chapter 510B and SF 383.

## JURISDICTION & VENUE

15.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331, because Plaintiffs' causes of action arise under the U.S. Constitution's Supremacy

Clause and its First and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1988.  *See* U.S.

Const. art. VI & amends. I and XIV; *see also Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14

(1983).

16.     The Court has personal jurisdiction over Defendant because he resides within and

has continuous and systematic contacts in Iowa.

17.     ABI has standing to pursue this action on behalf of its members because:  (a) its

employer-members operating in Iowa and offering and administering ERISA-governed health

benefit plans suffer a direct and adverse impact from the application and enforcement of SF 383

and thus would have standing in their own right; (2) the preemption and First-Amendment interests ABI seeks to protect for its members are at the core of its mission; and (3) the relief sought – which is injunctive and declaratory – does not require the participation of individual members. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

18.    Venue is proper pursuant to 28 U.S.C. § 1391, because events giving rise to the suit occurred in this District, Defendants reside in this District and implement and enforce SF 383 within this District, and SF 383 applies to health benefit plans, third-party payors, PBMs, and others in this District.

## BACKGROUND

### A.    Chapter 510B and SF 383

19.    Chapter 510B, as enacted in 2007 and effective January 1, 2008, and codified at Iowa Code § 510B, addressed PBMs doing business in Iowa.  PBMs are companies that act as intermediaries between health benefit plans, health insurers, drug manufacturers, pharmacies, and health-benefit-plan covered individuals who require prescription drugs.  PBMs are often contracted to administer and manage prescription drug benefits offered through health benefit plans, and PBM services include, among other things, processing claims and payments for covered prescription drugs, managing drug formularies and drug costs, and establishing and maintaining pharmacy networks through which individuals in health benefit plans can access covered prescription drugs at lower cost.

20.    As of the time of SF 383's enactment, Chapter 510B's provisions were limited in scope.  Not taking into account SF 383, Chapter 510B requires a PBM doing business in Iowa to obtain a certificate as a third-party administrator ("TPA") under Title XIII, subtitle 1, Chapter 510 ("Managing General Agents and Third-Party Administrators") and to comply with the

requirements on TPAs under that chapter.  In addition, Chapter 510B imposes on PBMs – and only PBMs, not health benefit plans – certain other standards and requirements, including good-faith conduct and conflict of interest standards when dealing with health benefit plans; prohibitions on retaliation against pharmacies for exercising rights under Chapter 510B; authorizations for the substitution of generic drugs for a prescribed drug; authorizations for PBMs to contact individuals seeking to fill prescriptions; and requirements that PBMs publish cost lists to pharmacies.  Amendments in 2014 to Chapter 510B were invalidated as preempted by ERISA.  *See, e.g.*, *Pharm. Care Mgmt. Ass'n v. Gerhart*, 852 F.3d 722, 730-32 (8th Cir. 2017).

21.    SF 383 greatly expands Iowa's regulation of PBMs and, importantly, adds extensive new restrictions and prohibitions directly on health benefit plans, health carriers, and third-party payors who provide prescription drug benefits to covered persons within Iowa.

22.    Chapter 510B, whose definitions govern SF 383, defines "Pharmacy benefits manager" as "a person who, pursuant to a contract or other relationship with a third-party payor, either directly or through an intermediary, manages a prescription drug benefit provided by third-party payor."  Iowa Code § 510B.1.15.  "Prescription drug benefit*"* means "a health benefit plan providing for third-party payment or prepayment for prescription drugs."  *Id. §* 510B.1.19. "Third-party payor" is defined, with some exceptions not relevant to this action, as "any entity other than a covered person or a health care provider that is responsible for any amount of reimbursement for a prescription drug benefit" and expressly includes "health carriers and other entities that provide a plan of health insurance or health care benefits."  *Id.* § 510B.1.22. "Covered person" means "a policyholder, subscriber, or other person participating in a health benefit plan that has a prescription drug benefit managed by a pharmacy benefits manager."  *Id.*

§ 510B.1.4.  "Health benefit plan" means "a policy, contract, certificate, or agreement offered or issued by a third-party payor to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services." *Id.* § 510B.1.6.  "Health carrier"  means "an entity subject to the insurance laws and regulations of this state, or subject to the jurisdiction of the commissioner, including an insurance company offering sickness and accident plans, a health maintenance organization, a nonprofit health service corporation, or a plan established pursuant to chapter 509A for public employees." *Id.* § 510B.1.9.

23.     Under these definitions, private employers (and those acting on their behalf) that offer health benefits to their employees (and the employees' dependents) are third-party payors within Chapter 510B's, and thus SF 383's, scope, and their coverage for their employees (and the employees' dependents) constitutes a health benefit plan for covered persons within Chapter 510B's, and thus SF 383's, scope.  Insurers underwriting and administering private employers' coverage for their employees (and the employees' dependents) are health carriers within Chapter 510B's, and thus SF 383's, scope.  And PBMs assisting the provision of private employers' coverage for their employees (and the employees' dependents) are pharmacy benefits managers within Chapter 510B's, and thus SF 383's, scope.

24.     SF 383 contains, among others, the following provisions, with **bold** notation for the entities and persons to whom the provision directly applies, as well as a shorthand description of the topic or type of provision at issue:

| Section | Language | Topic/Type of Provision |
|---------|----------|-------------------------|
| SF 383 § 1<br><br>(new) Iowa Code § 510B.1.4. | Adds an overarching anti-discrimination principle that states: "A **pharmacy benefits manager**, **health carrier**, **health benefit plan**, or **third-party payor** shall not discriminate against a pharmacy or a pharmacist with respect to | Anti-discrimination provision, including anti-referral element |

| | | |
|---|---|---|
| | participation, referral, reimbursement of a covered service, or indemnification if a pharmacist is acting within the scope of the pharmacist's license, as permitted under state law, and the pharmacy is operating in compliance with all applicable laws and rules" | |
| SF 383 § 3<br><br>(new) Iowa Code § 510B.4B.1.a. | Restricts **PBMs**, if "a pharmacy or pharmacist has agreed to participate in a **covered person**'s **health benefit plan**," from "prohibit[ing] or limit[ing] the **covered person** from selecting a pharmacy or pharmacist of the **covered person**'s choice, or impos[ing] a monetary advantage or penalty that would affect a **covered person**'s choice," with a "monetary advantage or penalty" defined as "includ[ing] a copayment or coinsurance variation, a reduction in reimbursement for services, a promotion of one participating pharmacy over another, or comparing the reimbursement rates of a pharmacy against mail order pharmacy reimbursement rates" | Provision limiting guiding covered persons to preferred pharmacies, including anti-promotion element |
| SF 383 § 3<br><br>(new) Iowa Code § 510B.4B.1.b. | Adds an any-willing-provider provision prohibiting **PBMs** from "[d]eny[ing] a pharmacy or pharmacist the right to participate as a contract provider under a **health benefit plan** if the pharmacy or pharmacist agrees to provide pharmacy services that meet the terms and requirements of the **health benefit plan** and the pharmacy or pharmacist agrees to the terms of reimbursement set forth by the **third-party payor** for similarly classified pharmacies" | Any-willing-pharmacy provision applicable to PBMs |
| SF 383 § 3<br><br>(new) Iowa Code § 510B.4B.1.c. | Imposes on **PBMs** a pharmacy-accreditation standard that prohibits use of, for "a pharmacy or pharmacist, as a condition of participation in a **third-party payor** network, any course of study, accreditation, certification, or credentialing that is inconsistent with, more stringent than, or in addition to state requirements for licensure or certification, and the administrative rules adopted by the board of pharmacy" | Pharmacy-accreditation standard for network participation |
| SF 383 § 3 | Restricts **PBMs** from "[u]nreasonably designat[ing] a prescription drug as a specialty drug[1] to prevent a **covered person** from | Open-access standard for specialty drugs, with |

---

[1] SF 383 defines "Specialty drug" as "a drug used to treat chronic and complex, or rare medical conditions and that requires special handling or administration, provider care coordination, or patient

| | | |
|---|---|---|
| (new) Iowa Code § 510B.4B.1.d. | accessing the prescription drug, or limiting a covered person's access to the prescription drug, from a pharmacy or pharmacist that is within the **health carrier**'s network"; and adds an enforcement provision under which a "**covered person** or pharmacy harmed by an alleged violation of this paragraph may file a complaint with the commissioner, and the commissioner shall, in consultation with the board of pharmacy, make a determination as to whether the covered prescription drug meets the definition of a specialty drug" | enforcement provision |
| SF 383 § 3 (new) Iowa Code § 510B.4b.1.e. | Prohibits **PBMs** from requiring a "**covered person**, as a condition of payment or reimbursement, to purchase pharmacy services, including prescription drugs, exclusively through a mail order pharmacy" | Prohibition on mail-order exclusivity |
| SF 383 § 3 (new) Iowa Code § 510B.4B.1.f. | Prohibits **PBMs** from "[i]mpos[ing] upon a **covered person** a copayment, reimbursement amount, number of days of a prescription drug supply for which reimbursement will be allowed, or any other payment or condition relating to purchasing pharmacy services from a pharmacy that is more costly or restrictive than would be imposed upon a **covered person** if the pharmacy services were purchased from a mail order pharmacy" | Cost-sharing equivalence for mail-order pharmacies |
| SF 383 § 3 (new) Iowa Code § 510B.4B.2.a. | Requires that if a "**third-party payor** providing reimbursement to covered persons for prescription drugs restricts pharmacy participation [in its network], the third-party payor shall notify, in writing, all pharmacies [of] the opportunity to participate in the health benefit plan at least sixty days prior to the effective date of the health benefit plan restriction" and also mandates that "[a]ll pharmacies in the geographical coverage area of the health benefit plan shall be eligible to participate under identical reimbursement terms for providing pharmacy services and prescription drugs" | Any-willing-pharmacy provision applicable to third-party payors, with accompanying notice requirement |

---

education that cannot be provided by a nonspecialty pharmacy or pharmacist."  SF 383 (new Iowa Code § 510B.1.21B.).

| SF 383 § 3

(new) Iowa Code § 510B.4B.2.b. | Requires that "[t]he **third-party payor** shall inform **covered persons** of the names and location of all pharmacies participating in the **health benefit plan** as providers of pharmacy services and prescription drugs" | Notice requirement to covered persons about in-network pharmacies |
|---|---|---|
| SF 383 § 3

(new) Iowa Code § 510B.4. | Adds enforcement measure providing that "[a] **covered person** or pharmacy injured by a violation of [§ 3 of SF 383] may maintain a cause of action to enjoin the continuation of the violation" | Enforcement provision |
| SF 383 § 4

(new) Iowa Code § 510B.8.3. | Requires that a **PBM** "shall not impose different cost-sharing or additional fees on a **covered person** based on the pharmacy at which the **covered person** fills the prescription drug order" | Cost-sharing equivalence at all pharmacies |
| SF 383 § 4

(new) Iowa Code § 510B.8.4. | Requires that "[f]or the purpose of reducing premiums, one hundred percent of all rebates received by a **pharmacy benefits manager** shall be passed through to the **health carrier**, or to the **employee plan sponsor** as permitted by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq." | Pass through by PBM of all rebates |
| SF 383 § 4

(new) Iowa Code § 510B.8.5. | Requires that **PBMs** "shall include any amount paid by a **covered person**, or on behalf of a **covered person**, when calculating the **covered person**'s total contribution toward the **covered person**'s cost-sharing" | Credit for cost-sharing, irrespective of source of funds |
| SF 383 § 4

(new) Iowa Code § 510b.8.6. | Requires that "[a]ny amount paid by a **covered person** for a prescription drug shall be applied to any deductible imposed on the **covered person** by the **covered person**'s **health benefit plan** in accordance with the **health benefit plan**'s coverage documents" | Credit toward deductible, in amount covered person pays |
| SF 383 § 4

(new) Iowa Code § 510b.8.7. | Requires that if "a **covered person**'s policy, contract, or plan providing for third-party payment or prepayment of health or medical expenses qualifies as a high-deductible health plan" under the Internal Revenue Code, then "a copayment, coinsurance, or deductible paid by the **covered person**" shall not count amounts from other sources until "after the **covered person** satisfies the **covered person**'s minimum deductible," if otherwise "the **covered person** [would] becom[e] ineligible for a health savings account" | Cost-sharing rules for high-deductible health-plans |

| | | |
|---|---|---|
| SF 383 § 5<br><br>(amended) Iowa Code § 510B.8B.1. | Requires a **PBM** to reimburse all pharmacies no less than the PBM reimburses an "affiliate for dispensing the same prescription drug." | Reimbursement rate by PBM to all pharmacies to match or exceed PBM affiliates' rate |
| SF 383 § 5<br><br>(amended) Iowa Code § 510B.8B.2. | Sets **PBM** reimbursement rate for retail pharmacies at "most recently published national average drug acquisition cost for the prescription drug on the date that the prescription drug is administered or dispensed" or, if unavailable, "the wholesale acquisition cost" | Reimbursement rate by PBMs to retail pharmacies at NADAC rate |
| SF 383 § 5<br><br>(amended) Iowa Code § 510B.8B.3. | Requires **PBM** to "reimburse the retail pharmacy or pharmacist a professional dispensing fee in the amount of ten dollars and sixty-eight cents"[2] | Dispensing fee for all prescriptions at retail pharmacies |
| SF 383 § 5<br><br>(amended) Iowa Code § 510B.8B.4.a. | Requires **PBM** to submit "a quarterly report to the commissioner of all drugs reimbursed at 10 percent or more below the national average acquisition cost," as well as those at "ten percent or more above" | Quarterly reporting to commissioner |
| SF 383 § 5<br><br>(amended) Iowa Code § 510B.8B.4.b. | Requires various items to be included in **PBM**'s quarterly report to the commissioner, including month and quantity of the prescription drug, whether dispensing pharmacy was an affiliate of the **PBM**, and if the drug was dispensed pursuant to a "government health plan" | Quarterly reporting to commissioner (additional details) |
| SF 383 § 5<br><br>(amended) Iowa Code § 510B.4.d. | Requires that "[a] copy of the report shall be published on the **pharmacy benefit manager**'s public internet site for twenty-four months" | Internet publication of quarterly report |
| SF 383 § 6<br><br>(amended) Iowa Code § 510B.8D.1. | Requires that "[a]ll contracts executed, amended adjusted, or renewed on or after July 1, 2025, that apply to prescription drug benefits on or after January 1, 2026, between a **pharmacy benefits manager** and a **third-party-payor**, or between a person and a **third-party payor**, shall include" the following provisions: (a) "pass-through pricing"[3]; and (b) payments received by PBM | Contract terms between third-party payor and PBM |

[2] Under SF 383, "'Retail pharmacy' means a pharmacy that is not a pharmacy chain or a publicly traded entity, and that does not exclusively provide mail order dispensing of prescription drugs." SF 383 § 1 (new Iowa Code § 510B.1.21A.). "'Pharmacy chain' means an entity that has twenty or more pharmacies under common ownership or control located in at least twenty or more states." *Id.* (new Iowa Code § 510B.1.16A.).

[3] SF 383 defines "'Pass-through pricing" as "a model of prescription drug pricing in which payments made by a third-party payor to a pharmacy benefits manager for prescription drugs are equivalent to the

| | "shall be used or distributed pursuant to the pharmacy benefit manager's contract with the third-party payor or with the pharmacy" | |
|---|---|---|
| SF 383 § 6<br><br>(new) Iowa Code § 510B.8D.2. | Requires that SF 383's mandated changes in contract terms "between a **pharmacy benefits manager** and a **third-party payor**" shall "supersede any contractual terms to the contrary in any contract executed, amended, adjusted, or renewed on or after July 1, 2025, that applies to prescription drug benefits on or after January 1, 2026" | Supersession of SF 383 over contrary contract terms between third-party payor and PBM |
| SF 383 § 7<br><br>(new) Iowa Code § 510B.8E.1.-.3. | Requires that "[a] **pharmacy benefits manager** shall provide a reasonable process to allow a pharmacy to appeal any matter," with detailed standards mandated for the appeal | Enforcement provision |

25.    As to its overall effective date, SF 383 "applies to pharmacy benefit managers, health carriers, third-party payors, and health benefit plans that manage a prescription drug benefit in the state on or after July 1, 2025."  SF 383 § 9.

26.    SF 383 has a severability provision, which states that "[t]he provisions of this division of this Act are severable pursuant to [Iowa Code § 4.12]."  *Id.* § 8.

27.    SF 383's enforcement is further enhanced by the enforcement provisions already within the Iowa Code and that otherwise will apply for violations of SF 383's provisions.  The civil penalties under Iowa Code § 507B.7.1.a. are:  "Payment of a civil penalty of not more than one thousand dollars for each act or violation of this subtitle, but not to exceed an aggregate of ten thousand dollars, unless the person knew or reasonably should have known the person was in violation of this subtitle, in which case the penalty shall be not more than five thousand dollars for each act or violation, but not to exceed an aggregate penalty of fifty thousand dollars in any one six-month period.  If the commissioner finds that a violation of this subtitle was directed,

---

payments the pharmacy benefits manager makes to the dispensing pharmacy or dispensing health care provider for the prescription drugs, including any professional dispensing fee."  SF 383 § 1 (new Iowa Code § 510B.1.11B.).

encouraged, condoned, ignored, or ratified by the employer of the person or by an insurer, the commissioner shall also assess a penalty to the employer or insurer."

28.     Industry analyses of SF 383 estimate that, in the aggregate, the cost for health benefit plans and covered persons, if SF 383 becomes effective, will increase annually by tens of millions of dollars – perhaps by as much as $340 million annually.  Jason Clayworth, *Iowa Groups Urge Reynolds to Veto Pharmacy Reform Bill*, Axios Des Moines (May 14, 2025), https://www.axios.com/local/des-moines/2025/05/14/iowa-pharmacy-benefit-manager-reform-pbm [hereinafter "Clayworth, Axios Article"].

29.     Plaintiffs understand SF 383 to be among the most expensive, single Iowa legislative enactments ever passed effecting an increase in costs for health benefit plans; and it will likely precipitate the largest increase in health-benefit-plan costs for Iowa's third-party payors from any source of legislation – federal or state – since enactment of the Patient Protection and Affordable Care Act by Congress in 2010.

30.     The Iowa legislature made the object of the legislation well-known during the legislative process, emphasizing that the bill sought to provide money to local independent pharmacies, particularly in rural areas.[4]  But the new law does much more than that, shifting costs onto employers and their employees and even benefiting some large corporate pharmacies.

---

[4] *E.g.*, *Senate Video SF 383: by Klemish from Winneshiek*, Iowa Legislature, at 04:47:25–04:47, https://www.legis.iowa.gov/dashboard?view=video&chamber=S&clip=s2025042—8040306830—&dt=2025-04-28&offset=2030&bill=SF%20383&status=i&ga=91 (Apr. 28, 2025); *id.* at 04:48:18 - 04:49:12; *House Video SF 383: by Lundgren from Dubuque*, Iowa Legislature, 05:44:13–5:45:22, https://www.legis.iowa.gov/dashboard?view=video&chamber=H&clip=h20250512051355834&dt=2025-05-12&offset=1429&bill=SF%20383&status=r; Gigi Wood, *Businesses Split on PBM Bill Sent to Governor*, BUS. REC. (May 23, 2025), https://www.businessrecord—.com/businesses-split-on-pbm-bill-sent-to-governor/; Stephen Gruber-Miller, *Iowa lawmakers target prescription drug prices, pharmacy reimbursements with "PBM" bills*, Des Moines Reg. (Feb. 6, 202, https://www.desmoinesregister.com—/story/news/politics/2025/02/06/iowa-legislature-targets-pharmacy-benefit-managers-with-pbm-bills-aimed-to-help-costs/78244622007/.

*See* Clayworth, Axios Article (noting that "Hy-Vee, Iowa's largest pharmacy retailer, is projected to receive an additional $66 million annually under the bill").

**B.    ERISA Preemption**

31.    ERISA's coverage extends to any employee benefit plan, including health benefit plans, established or maintained by a private employer or employee organization (such as a union or association of related employers).  *See* 29 U.S.C. § 1003(a), (b).

32.    ERISA plans may be self-funded or insured, with the former resulting from the employer carrying the risk of benefit payments itself and the latter resulting from the employer's purchase of an insurance policy that shifts the risk of benefit payment to an insurance company. *See id.* § 1002(1) (noting that employer may establish a "welfare benefit plan" through "the purchase of insurance or otherwise").

33.    Despite ERISA's broad coverage, "[n]othing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996); *see Conkright v. Frommert*, 559 U.S. 506, 516 (2010) ("Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place.").  Rather, ERISA leaves employers free "for any reason at any time, to adopt, modify, or terminate [benefit] plans."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

34.    In enacting ERISA, Congress undertook "a 'careful balancing'" to encourage the creation of employee benefit plans and "'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'"  *Conkright,* 559 U.S. at 517 (quoting *Aetna Health Inc. v. Davila*, 542

U.S. 200, 215 (2004), and *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).  Thus, "ERISA '[induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'"  *Id.* (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).

35.    The "'oversight systems and other standard procedures'" provided in ERISA to apply when an employer does choose to offer benefits – so as to "'make the benefits promised by an employer more secure'" – include denominating those administering ERISA plans as fiduciaries, as well as creating reporting, recordkeeping, and disclosure requirements.  *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320-21 (2016)).

36.    Among an ERISA fiduciary's obligations are the duties to act "solely in the interests of the [plan's] participants and beneficiaries"[5]:  (a) for "the exclusive purpose of . . . providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan"; (b) with "the care, skill prudence, and diligence" of "a prudent man" in like circumstances; and (c) "in accordance with the documents and instruments governing the plan," insofar that they are consistent with ERISA.  29 U.S.C. § 1104(a)(1),(A), (B), and (D).  Fiduciaries are also tasked with "[c]ontracting or making reasonable arrangements" with service providers needed "for establishment or operation" of an ERISA plan and ensuring that "no more than reasonable compensation is paid therefor."  *Id.* § 1108(b)(2)(A).

---

[5] Under ERISA, a "'participant' means any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan," and a "'beneficiary' means a person designated by a participant . . . who is or may become eligible for a benefit [under an ERISA plan]."  29 U.S.C. § 1002(7)-(8).

37.     Uniformity and affordability in the regulation and administration of ERISA plans was paramount to Congress:  "'Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of "minimiz[ing] the administrative and financial burden[s]" on plan administrators – burdens ultimately borne by the beneficiaries.'"  *Gobeille*, 577 U.S. at 321 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-50 (2001), quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990), and citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)).

38.     Congress therefore adopted ERISA's preemption section, which states the broad preemptive effect of the statute, providing that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA.  29 U.S.C. § 1144(a).  "State law[s]" are defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," with "State," in turn, including "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate directly or indirectly, the terms and conditions of employee benefit plans covered by [ERISA]."  *Id.* § 1144(c)(1)-(2).

39.     ERISA's preemption section "indicates Congress's intent to establish the regulation of employee welfare benefit plans as exclusively a federal concern."  *Gobeille*, 577 U.S. at 321 (internal quotation marks and citation omitted).  "Congress sought 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law,' thereby 'minimiz[ing] the administrative and financial burden of complying with conflicting directives' and ensuring that plans do not have to tailor substantive benefits to the particularities of multiple jurisdictions."  *Rutledge*, 592 U.S. at 86 (quoting *Ingersoll-Rand*, 498 U.S. at 142).

40.    Pursuant to ERISA's preemption provision, a state law "relate[s] to" an ERISA plan, and is preempted, "'if it has a *connection with* or *reference to* such a plan.'"  *Id.* at 85 (quoting *Egelhoff*, 532 U.S. at 147) (emphasis added).  Under these standards, the Supreme Court has "virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted.'"  *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 829 (1988) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987), and *Shaw v. Delta Air Lines*, 463 U.S. 85, 98 (1983)).

41.    A state law has a "connection with" ERISA plans, and therefore "relate[s] to" them and is preempted, if:

a.    The state law "require[s] providers [*i.e.*, ERISA-plan sponsors] to structure benefit plans in particular ways, such as by requiring payment of specific benefits, or binding plan administrators to specific rules for determining beneficiary status."  *Rutledge*, 592 U.S. at 86-87 (citations omitted).

b.    The state law "'governs . . . a central matter of plan administration,'" such as reporting, recordkeeping, disclosures, or fiduciary obligations, or "'interferes with nationally uniform plan administration.'"  *Gobeille*, 577 U.S. at 320 (quoting *Egelhoff*, 532 U.S. at 148).

c.    The state law has "'acute, albeit indirect, economic effects'" so as to "'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'"  *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* ("*Travelers*"), 514 U.S. 645, 668 (1995)).

42.    As state law will also have a "connection with" an ERISA plan if it sets forth an "alternative enforcement mechanism" to the remedies ERISA provides in 29 U.S.C. § 1132(a).  *Travelers*, 514 U.S. at 658.  Separately, ERISA's enforcement scheme, particularly 29 U.S.C.

§ 1132(a), of its own power, preempts state-law remedies that would operate against ERISA plans. *See Aetna Health Inc.*, 542 U.S. at 217; *Ingersoll-Rand*, 498 U.S. at 142.

43.     A state law makes "reference to" an ERISA plan, and therefore "relate[s] to" an ERISA plan and is preempted, if it "'acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation.'" *Gobeille,* 577 U.S. at 319-20 (quoting *Cal. Div. of Labor Standards Enf't v. Dillingham Constr. N.A.*, 519 U.S. 316, 325 (1997)).

44.     ERISA preemption extends to state laws that regulate ERISA plans directly as well as indirectly through state laws that regulate ERISA-plan providers supplying administrative services, including PBMs (and TPAs), because – in light of the fact that "PBMs manage benefits on behalf of plans" – "a regulation of PBMs 'function[s] as a regulation of an ERISA plan itself.'" *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 966 (8th Cir. 2021) (quoting *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 613 F.3d 179, 188 (D.C. Cir. 2010)); *see generally Pharm. Care Mgmt. Ass'n v. Gerhart*, 852 F.3d 722, 730-32 (8th Cir. 2017) (finding that ERISA preempted earlier version of Iowa Code § 510B.8.).

45.     ERISA's insurance "savings" clause provides that state laws "relat[ing] to" ERISA plans and otherwise preempted will be saved from preemption if they are "State laws which regulate insurance." 29 U.S.C. § 1144(b)(2)(A). However, under ERISA's "deemer" clause, *id.* § 1144(b)(2)(B), self-funded ERISA plans and the PBMs who assist them in administering their ERISA plans cannot be considered insurance companies or engaged in the business of insurance and thereby be subject to any saved state insurance regulations. A self-funded MEWA can be subject to saved state insurance regulations "to the extent not inconsistent with [ERISA]." *Id.* § 1144(b)(6)(ii).

46.     A state law regulates insurance, so as to be saved for insured ERISA plans and potentially for plans that are self-funded MEWAs, only where the state law is:  (a) "specifically directed toward entities engaged in insurance," and (b) "substantially affect[s] the risk pooling arrangement between the insurer and the insured."  *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 342 (2003).

**C.     The First Amendment**

47.     In relevant part, the First Amendment of the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  The requirements of the First Amendment apply to the states through the Fourteenth Amendment. *See 1-800-411-Pain Referral Serv., LLC v. Otto* ("*Otto*"), 744 F.3d 1045, 1054 (8th Cir. 2014).

48.     "'[F]reedom of speech includes both the right to speak freely and the right to refrain from speaking at all.'"  *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019) (quoting *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892 (2018)).

49.     The First Amendment protects commercial speech "from unwarranted governmental regulation," as "[c]ommercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information."  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561-62 (1980).  As such, governmental burdens on protected commercial speech are subject to heightened scrutiny.  *Id.* at 564.

50.     To assess the constitutionality of an infringement on commercial speech, "[t]he first question to ask is whether the challenged speech restriction is content- or speaker-based, or both."  *Otto*, 744 F.3d at 1054 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011)).

"Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). Governmental restrictions on speech are content-based where the government "disfavors speech with a particular content." *Otto*, 744 F.3d at 1055.

51.     There is a four-part test to determine if a content- or speaker-based infringement on commercial speech survives constitutional scrutiny:  "(1) whether the commercial speech at issue concerns unlawful activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest." *Id.*

52.     "[I]t is the State's burden to justify its content-based law as consistent with the First Amendment," *Sorrell*, 564 U.S. at 571-72, and to "demonstrate that the harms it recites are real." *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).

## CLAIMS FOR RELIEF

### COUNT 1 (ERISA PREEMPTION)

53.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if fully set forth herein.

54.     SF 383 applies to ERISA plans because an ERISA-plan sponsor is a "Third-party payor" under SF 383, an ERISA plan is a "Health benefit plan" under SF 383, ERISA-plan participants and beneficiaries are "Covered person[s]" under SF 383, and a PBM providing services to an ERISA plan is a "Pharmacy benefits manager" under SF 383.

55.     As applied to ERISA plans and their sponsors, either directly to them or indirectly through their PBMs, SF 383 has a "connection with" ERISA plans, and therefore "relate[s] to"

ERISA plans and is preempted, because SF 383's provisions require ERISA-plan sponsors to structure their plans in particular ways, govern central matters of ERISA-plan administration, and interfere with nationally uniform ERISA-plan administration, including (in the order of the provisions' placement in SF 383, as listed in the preceding chart, *see supra* ¶ 24):

      a.      SF 383's anti-discrimination provision (new Iowa Code § 510B.1.4), which prohibits differentiation by an ERISA plan and its PBM among pharmacies within the ERISA plan's network, dictates the design of an ERISA plan's prescription drug benefits by prohibiting an ERISA plan from adopting terms that establish incentives (such as lower cost-sharing) for certain pharmacies in the network and by prohibiting the limiting of the dispensing of specialty drugs to certain pharmacies within the network; and it interferes with a central matter of ERISA-plan administration by limiting the extent to which an ERISA plan's fiduciaries and other administrators can recommend or refer participants and beneficiaries to a pharmacy in the participants', beneficiaries', and ERISA plan's best financial and other interests.

      b.      SF 383's provision (new Iowa Code § 510B.4B.1.a.) that limits the guiding of covered persons to preferred pharmacies dictates the design of an ERISA plan's prescription drug benefits by prohibiting an ERISA plan from adopting terms establishing incentives for the utilization of certain pharmacies in the network, such as varying copayment and coinsurance terms or varying benefit allowances for different categories of in-network pharmacies; and it interferes with a central matter of plan administration by restricting the extent to which an ERISA plan's fiduciaries and other administrators can recommend or promote participants and beneficiaries to a pharmacy in the participants', beneficiaries', and ERISA plan's best financial and other interests.

c.      SF 383's any-willing-pharmacy provision (new Iowa Code

§ 510B.4B.1.b.) applicable to PBMs that administer a health benefit plan's prescription drug

benefits dictates how an ERISA plan's pharmacy network is designed and maintained, the terms

an ERISA plan must offer to pharmacies in its network, and the terms of ERISA-plan coverage

that must be offered to participants and beneficiaries using pharmacy networks.

d.      SF 383's provision (new Iowa § 510B.4B.1.c.) setting a pharmacy-

accreditation standard for participation in a third-party payor's network (not just a PBM's

network) dictates how an ERISA plan's pharmacy network is designed and maintained.

e.      SF 383's provision (new Iowa Code § 510B.4B.1.d.) that calls for more

open accessibility to specialty drugs dictates how an ERISA plan's pharmacy network is

designed and maintained, the terms an ERISA plan must offer to pharmacies in its network, and

the terms of ERISA-plan coverage to be offered to participants and beneficiaries using specialty

drugs.

f.      SF 383's provision (new Iowa Code § 510B.4b.1.e.) that prohibits mail-

order exclusivity dictates the terms of ERISA-plan coverage that must be offered to participants

and beneficiaries by removing a cost-effective benefits option ERISA-plan sponsors may adopt.

g.      SF 383's provision (new Iowa Code § 510B.4B.1.f.) that requires cost-

sharing equivalence based on cost-sharing for prescription drugs obtained from mail-order

pharmacies dictates the design of an ERISA plan's prescription drug benefits by prohibiting an

ERISA plan from adopting terms incentivizing the use of mail-order pharmacies, such as varying

copayment and coinsurance terms.

h.      SF 383's any-willing-provider provision (new Iowa Code § 510B.4B.2.a.)

applicable to third-party payors, which has an accompanying notice requirement, dictates how an

ERISA plan's pharmacy network is designed and maintained, the terms an ERISA plan must offer to pharmacies in its network, and the terms of ERISA-plan coverage that must be offered to participants and beneficiaries using pharmacy networks; and it interferes with a central matter of ERISA-plan administration by enlarging the requirements governing an ERISA plan's mandated disclosures in Iowa.

   i. SF 383's provision (new Iowa Code § 510B.4B.2.b.) requiring notice by third-party payors to covered persons of details about network providers interferes with a central matter of ERISA-plan administration by enlarging the requirements governing an ERISA plan's mandated disclosures in Iowa.

   j. SF 383's provision (new Iowa Code § 510B.8.3.) that requires cost-sharing equivalence among all pharmacies dictates the design of an ERISA plan's prescription drug benefits by prohibiting an ERISA plan from adopting terms establishing incentives for using certain pharmacies in the network, such as varying copayment and coinsurance terms.

   k. SF 383's provision (new Iowa Code § 510B.8.4.) that requires a pass through by a PBM of all rebates to the ERISA plan or its insurer interferes with a central matter of ERISA-plan administration by limiting how an ERISA plan may choose to compensate a PBM for the PBM's services and by forcing ERISA plans and ERISA-plan sponsors who currently use rebates flowing to the PBM to help compensate the PBM for its services to adopt alternative compensation arrangements with their PBMs.

   l. SF 383's provisions (new Iowa Code § 510B.8.5. &.6.) that require inclusion in cost-sharing and deductibles of any amounts paid on behalf of a covered person, such as via drug manufacturer coupons and other manufacturers' incentives, dictates the design

of an ERISA plan's prescription drug benefits by prohibiting the adoption of copayment, coinsurance, and deductible terms that exclude such third-party incentives from the calculations.

m.    SF 383's provision (new Iowa Code § 510B.8B.1.) that requires reimbursement rates to all pharmacies to match or exceed PBM affiliates' reimbursement rates dictates the design of an ERISA plan's prescription drug benefits by prohibiting ERISA plans from adopting terms that incentivize participants and beneficiaries to utilize pharmacy options that may be more cost-effective to the ERISA plan and that would lead to decreased cost-sharing for participants and beneficiaries.

n.    SF 383's provisions (amended § 510B.8B.4.a., .b., & .d.) requiring quarterly reporting to the commissioner, including internet publication, interferes with a central matter of ERISA-plan administration by enlarging the requirements governing an ERISA plan's mandated disclosures in Iowa.

o.    SF 383's provisions (new Iowa Code § 510B.8D.1. & .2.) requiring that contracts between third-party payors and PBMs contain pass-through pricing and other contract terms interfere with a central matter of ERISA-plan administration by limiting how an ERISA plan may choose to compensate a PBM for PBM services and forcing ERISA plans and ERISA-plan sponsors to alter contracts that allow PBMs, as part of their compensation, to retain increments generated under alternatives to pass-through pricing.

56.    SF 383's enforcement provisions (new Iowa Code §§ 510B.4B.1.d., 510B.4., and 510B.8E.1.-.3.) authorizing causes of action against third-party payors and PBMs by those injured by alleged violations of provisions in SF 383, including covered persons and pharmacies, have a "connection with" ERISA plans, and therefore "relate to" them and are preempted, because they provide alternative enforcement mechanisms to ERISA's exclusive remedies to

challenge, and assert liability for, conduct by ERISA-plan sponsors, ERISA plans, and PBMs administering prescription drug benefits on an ERISA plan's behalf.

57.     Separately, as a result of 29 U.S.C. § 1132(a), ERISA's enforcement scheme, of its own force, preempts SF 383's enforcement provisions (new Iowa Code §§ 510B.4B.1.d., 510B.4., and 510B.8E.1.-.3.) authorizing causes of action against third-party payors and PBMs by those injured by alleged violations of provisions in SF 383, including covered persons and pharmacies, because they provide alternative enforcement mechanisms to ERISA's exclusive remedies to challenge, and assert liability for, conduct by ERISA-plan sponsors, ERISA plans, and PBMs administering prescription drug benefits on an ERISA plan's behalf.

58.     The financial effects of SF 383's various provisions – including its dispensing-fee requirement (amended Iowa Code § 510B.8B.3.), which adds at least $10.68 cents to the cost of each prescription drug dispensed at retail pharmacies – are so acute that they necessarily and severely impact ERISA-plan sponsors' substantive coverage choices and use of service providers (such as PBMs), and, on that basis, SF 383's provisions have a "connection with" ERISA plans and, therefore, "relate to" them and are preempted.

59.     SF 383's provision (new Iowa Code § 510B.8.4.) compelling that rebates be passed through by PBMs expressly to "the employee plan sponsor as permitted by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*" impermissibly makes a "reference to" ERISA plans and, therefore, "relate[s] to" them and is preempted.

60.     SF 383's preempted provisions, if effective and not invalidated, will have immediate and lasting injury and impact on Plaintiffs, including:

a.    Beginning July 1, 2025, Plaintiffs[6] must modify their ERISA plans and the benefits they offer to conform to SF 383, modify their ERISA-plan administration procedures to conform to the requirements of SF 383, and begin modifying their contracts with their PBMs in accordance with SF 383.

b.    Absent modifications, Plaintiffs will be in jeopardy of enforcement by Iowa authorities for violation of SF 383's provisions, while at the same time also be in jeopardy of violating ERISA by not faithfully complying with current ERISA-plan terms and fiduciary obligations that are contrary to SF 383's directives.

c.    Plaintiffs must produce and distribute the mandated and costly notices to pharmacies and ERISA participants and beneficiaries above and beyond what is required under ERISA, as well as new notices to ERISA participants and beneficiaries regarding their ERISA plans' altered prescription drug benefits and pharmacy networks.

d.    Plaintiffs will incur substantial increased costs as a result of SF 383's provisions, including its mandatory dispensing fee, starting on July 1, 2025.

e.    Plaintiffs will begin the process of mitigating SF 383's costs, by amending their ERISA plans to offer more limited prescription drug offerings and greater cost-sharing by covered persons and otherwise to cut benefits.

61.    SF 383 provisions are preempted both for self-funded ERISA plans and for insured and similar ERISA plans for which state insurance regulations sometimes are "saved" under ERISA's insurance savings clause, 29 U.S.C. § 1144(b)(2)(B), because:

a.    Under ERISA's "deemer" clause, *id.* § 1144(b)(2)(B), self-funded ERISA plans and the PBMs who assist them in administering their ERISA plans cannot be considered

---

[6] Reference to "Plaintiffs" includes ABI's members.

insurance companies or engaged in the business of insurance and thereby be subject to any saved state insurance regulations.

b.      SF 383's provisions do not meet the test to be "saved" as state insurance regulations to insured and similar ERISA plans because:  (i) SF 383's provisions are not specifically directed toward entities engaged in insurance, but instead encompass and are directed as well to, in the majority of its provisions, additional entities such as PBMs and pharmacies that carry no risk; and (ii) SF 383 does not substantially affect the risk pooling arrangement between the insurer and the insured, given that it is indifferent to the risk-pooling between them and, in contrast, seeks to affect beneficially and primarily the financial situation of certain pharmacies.

c.      SF 383's provisions, even if assumed to be insurance regulations, are inconsistent with ERISA's requirements, including a fiduciary's obligations to follow plan terms as written and to act solely for their participants' and beneficiaries' interests and for the purpose of defraying an ERISA plan's administrative expenses.  For example, as of July 1, 2025, terms in ERISA plans that fiduciaries must follow will be illegal under state law; additionally, SF 383's provisions prevent ERISA plans and their fiduciaries and administrators from communicating with an ERISA plan's participants and beneficiaries about cost-savings to be incurred through use of certain pharmacies and plan options.

62.    Notwithstanding that SF 383 contains a severability provision, the provisions of SF 383 that ERISA preempts are not severable from the remainder of SF 383, because the exclusion of the offending provisions for ERISA plans fundamentally alters the nature and scope of what the Iowa legislature enacted, and the soundest conclusion is that the legislature would have preferred no law at all to the one resulting after preemption.  The task of severing is

unworkable and impermissibly legislative in function, in that the Court would be placed in the position of fashioning new legislation upon voiding whole provisions, excising words from other provisions, limiting various provision as applied to ERISA plans, and adjudging the extent to which any remaining provisions or words are inextricably intertwined with the illegal parts.

63.    Because ERISA preempts SF 383's provisions, they are null and void as applied to ERISA plans, their sponsors, their fiduciaries, their administrators, their PBMs, and their participants and beneficiaries, should be enjoined from operation, and should be declared illegal.

### *COUNT 2 (FIRST AMENDMENT)*

64.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if fully set forth herein.

65.    SF 383's provision (new Iowa Code § 510B.1.4) purporting to address discrimination prohibits PBMs, health benefit plans, carriers, and third-party payors from "discriminat[ing]" against a pharmacy or pharmacist "with respect to," among other things, "referral[s]."  This anti-referral provision, by preventing referrals of particular pharmacies for reasons including cost-savings and quality, infringes upon the rights of third-party payors, health benefit plans, and PBMs, including Plaintiffs, to provide accurate and consumer-relevant information to covered persons (*i.e.*, those participating in Plaintiffs' relevant health benefit plans) about their prescription drug benefits.

66.    SF 383's provision (new Iowa Code § 510B.4B.1.a.) barring PBMs from "prohibit[ing] or limit[ing]" covered persons from selecting a participating pharmacy of their choice defines "prohibit or limit" to include, among other things, "a promotion of one participating pharmacy over another."  This anti-promotion provision limiting the guiding of covered persons to preferred pharmacies infringes upon third-party payors' and health benefit

plans', including Plaintiffs', and their PBMs' rights to provide accurate and complete information to covered persons, which harms covered persons and their health benefit plans by depriving covered persons of beneficial, cost-saving information.

67.     SF 383's notice requirement, found in the any-willing-provider provision applicable to third-party payors (new Iowa Code § 510B.4B.2.a.), and which requires third-party payors that impose restrictions on pharmacy participation in a health benefit plan to "notify, in writing, all pharmacies within the geographical coverage area of the health benefit plan restriction, and offer the pharmacies the opportunity to participate in the health benefit plan," compels Plaintiffs to speak about the terms of confidential health benefit plans to parties with which the third-party payors have no relationship.  This notice requirement infringes upon third-party payors', including Plaintiffs', protected right not to speak and harms third-party payors, including Plaintiffs, by compelling the revelation of commercially sensitive information.

68.     The anti-referral and anti-promotion provisions prevent third-party payors, health benefit plans, and their PBMs, such as Plaintiffs, from speaking freely to covered persons regarding their prescription drug benefits.  The notice provision prevents third-party payors, including Plaintiffs, from refraining from speaking about their pharmacy networks to any pharmacy in the geographical area, regardless of the relationship (or lack thereof) between the parties.

69.     The anti-referral provision is both content- and speaker-based.  It disfavors speech with a particular content, namely, speech that distinguishes certain pharmacies from others and "refers" certain pharmacies while not referring others.  The anti-referral provision is speaker-based because it prevents only certain disfavored speakers – PBMs, health benefit plans, health

carriers, and third-party payors – from providing pharmacy referrals, as opposed to, for example, medical professionals or others with pertinent knowledge.

70.     The anti-promotion provision is both content- and speaker-based.  It specifically prohibits promotional speech elevating "one participating pharmacy over another."  New Iowa Code § 510B.4B.1.a.  The anti-promotion provision is also speaker-based because it restricts the speech only of PBMs acting on behalf of health benefit plans, as opposed to any other entity involved in the provision of pharmacy benefits to covered persons, thereby disfavoring certain speakers.

71.     The notice requirement is both content- and speaker-based.  It mandates speech that third-party payors, such as Plaintiffs, otherwise would not make, thereby necessarily altering the content of the speech.  Plaintiffs otherwise would not provide the mandated notices, as the structure and terms of health benefit plans and their provider networks are highly sensitive commercial information that third-party payors, including Plaintiffs, seek to protect from competitors.  Additionally, the notice requirement is content-based because it disfavors speech with a particular content, namely, speech referencing pharmacy networks that contain restrictions.  And the notice requirement is speaker-based, as it imposes a burden only on disfavored third-party payors – those that maintain restricted pharmacy networks.

72.     The anti-referral and anti-promotion provisions do not purport to restrict misleading speech or speech concerning unlawful activity.  Rather, the provisions place restrictions on third-party payors, health benefit plans, and their PBMs in an effort to protect the commercial interests of rural independent pharmacies, even at the expense of the third-party payors', health benefit plans', and PBMs' speech rights and covered persons' ability to access beneficial information about their prescription drug benefits.  Third-party payors, health benefit

plans, and PBMs seek to "promote" or "refer" certain in-network pharmacies to covered persons to communicate the availability of lower-cost or higher-quality pharmacy offerings, information that covered persons and their health benefit plans value.

73.    The compelled speech at issue in the notice requirement does not concern unlawful or misleading activities. The trigger for having to comply with the notice clause is simply providing reimbursement for pharmacy benefits through a pharmacy network that contains *lawful* restrictions. Such restrictions, which the state disfavors, are commonplace and serve important cost-saving functions for covered persons and health benefit plans. Pharmacy network restrictions are not misleading, as they are industry-standard and transparent for all pharmacies for which they are relevant.

74.    Iowa does not have a substantial interest in preventing (through the anti-referral and anti-promotion provisions) third-party payors, health benefit plans, and their PBMs from communicating salient information to covered persons, or in forcing (through the notice requirement) third-party payors to share commercially sensitive information with parties with whom the third-party payors have no preexisting relationship. There are no "harms" that would be prevented by burdening speech in this manner, particularly given that Chapter 510B already imposes requirements on PBM contracts with pharmacies.

75.    Even if Iowa had a substantial interest animating the anti-referral and anti-promotion provisions and the notice requirement, these provisions are overbroad and indirect regulations that are insufficiently narrow in their tailoring. The anti-referral and anti-promotion provisions do not directly advance Iowa's interests, substantial or not, as Iowa seeks to protect pharmacy rights, but it does so by burdening the rights of *other* parties – the speech rights of third-party payors, health benefit plans, and their PBMs and the rights of covered persons to

accurate, full information.  This indirect attempt to shore up the commercial position of certain pharmacies amounts to a "fear that people would make bad decisions [according to the government] if given truthful information," which is insufficient to justify what amounts to a silencing of Plaintiffs.  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002).  Further, the amount of beneficial speech prohibited by these provisions demonstrates that they lack the required narrow tailoring.  They prevent third-party payors, health benefit plans, and their PBMs from referring certain pharmacies or promoting participating pharmacies in any manner and for any reason, regardless of how beneficial to the covered person or the health benefit plan.

76.    The notice requirement likewise fails for lack of narrow tailoring.  Instead of pursuing its purported end of increasing pharmacy network access directly through non-speech-related means, Iowa has relied on compelling speech that may not even have the effect Iowa seeks.  The notice requirement is an indirect, overly extensive, and unduly burdensome mandate that requires uniform disclosure to *all* area pharmacies, regardless of whether any given pharmacy demonstrates interest in participating in a third-party payor's network.

77.    Collectively, and individually, the anti-referral and anti-promotion provisions and the notice requirement have severe practical consequence for and cause injury not just to third-party payors, health benefit plans, carriers, and PBMs and other TPAs, but also covered persons. SF 383 prohibits Iowa employers and health-benefit-plan sponsors and their insurers, TPAs, and PBMs from telling employees and their dependents that they can save money (for instance, through avoiding the $10.68 dispensing fee) by:  (a) filling their prescriptions at a national pharmacy chain such as Walgreens, CVS, Wal-Mart, Costco, etc., or (b) utilizing a mail-order pharmacy for their prescription needs.  All of those who finance covered prescription drug benefits, including covered persons, stand to lose through ever-accumulating greater costs,

because of SF 383's silencing of relevant, useful commercial speech, so that select retail pharmacies may benefit.

78.    The illegality under the First Amendment of SF 383 provisions makes any severability analysis further unworkable.  With numerous provisions preempted by ERISA and provisions also barred under the First Amendment, any remainder cannot be salvaged without impermissibly refashioning SF 383 into an incomprehensible and unworkable measure and one that the legislature would not have enacted.

79.    Because SF 383 violates the First Amendment rights of third-party payors, health benefit plans, their insurers, and their PBMs, SF 383's provisions are null and void, should be enjoined from operation, and should be declared unconstitutional and illegal.

## REQUEST FOR PRELIMINARY RELIEF

80.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if fully set forth herein.

81.    Plaintiffs are entitled to preliminary injunctive relief and will promptly seek it in this action or otherwise inform the Court of a change in circumstances that makes preliminary relief unnecessary.

82.    Plaintiffs are likely to succeed on the merits of their ERISA-preemption and First Amendment causes of action.  As noted already, in numerous ways, SF 383's provisions require, so as to trigger ERISA preemption, ERISA-plan sponsors to structure their plans in particular ways, govern central matters of ERISA-plan administration, including fiduciary obligations, reporting, and disclosures, and interfere with nationally uniform ERISA-plan administration by making it impossible to administer multi-state ERISA plans in Iowa the same as in other states. Likewise, as noted already, provisions of SF 383 impermissibly suppress or require commercial

speech without sufficient justification or narrow tailoring, making SF 383 violative of the First Amendment.

83. SF 383 will cause Plaintiffs to suffer immediate and irreparable injury for which there is no adequate remedy at law because:

a. Plaintiffs, under SF 383, are subject to a state law that is invalid and preempted by ERISA and invalid under the First Amendment.

b. Beginning July 1, 2025, Plaintiffs must modify their ERISA-covered plans and the benefits they offer to conform to SF 383, modify their ERISA-plan administration procedures to conform to the requirements of SF 383, and begin modifying their contracts with their PBMs in accordance with SF 383; must produce and distribute the mandated and costly notices to pharmacies and ERISA participants and beneficiaries above and beyond what is required under ERISA, as well as new notices to ERISA participants and beneficiaries regarding their ERISA plans' altered pharmacy benefits and provider networks; and will incur substantial increased costs as a result of SF 383's provisions, including its mandatory dispensing fee.

c. Once accomplished, the changes to ERISA-plan documents and instruments cannot readily and quickly be undone, so that Plaintiffs need immediate relief to protect their right to meaningfully obtain the benefit of a positive ERISA-preemption or First-Amendment ruling on the merits.

d. Plaintiffs cannot recoup their expenditure of funds in compliance with SF 383 incurred while awaiting a ruling on the merits, because there is no mechanism under Chapter 510B or SF 383 to recover the costs associated with compliance in the meantime or any enforcement penalties or other amounts paid to Iowa or to others and Defendant's immunity from damages would prevent a remedial monetary recovery directly from him.

e.      The harm to Plaintiffs cannot adequately be compensated by money damages, is irreparable absent injunctive relief, including a preliminary injunction, and a declaration that SF 383 is invalid and preempted.

84.      The balance of equities favors Plaintiffs, because Iowa suffers no harm as a result of preliminary relief by being prevented from violating federal law and the Constitution.  Iowa actually conserves resources by avoiding enforcement obligations associated with SF 383.  And whereas Plaintiffs' losses while awaiting a positive ruling on the merits from the Court cannot later be recouped, any wrongs suffered by other parties should the Court grant preliminary relief later found to be not owing, can more readily be remedied, especially given that the law is not yet in effect and no parties can reasonably rely on nascent, legally challenged protections.

85.      The public interest favors a preliminary injunction because the public has no interest in the enforcement of an illegal state law and injunctive relief will preserve the status quo.  Plus, members of the public will *save* money through the enjoining of SF 383's expensive provisions in comparison to the substantial additional costs, such as increased cost-sharing obligations, they are likely to face absent an injunction.  And covered persons are likely to lose valuable coverage if SF 383 is not enjoined, as third-party payors seek to revise their health benefit plans to mitigate SF 383's costs through more limited prescription drug and health-benefits offerings and greater cost-sharing by covered persons.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Preliminarily and permanently enjoin enforcement of SF 383 in its entirety;

B.      Preliminarily and permanently enjoin Defendant and officers, agents, subordinates, and employees under him from implementing or enforcing any requirements under

SF 383 or assessing penalties against Plaintiffs who are otherwise subject to Chapter 510B as amended by SF 383;

      C.     Declare, pursuant to 28 U.S.C. § 2201, that ERISA preempts Chapter 510B as amended by SF 383 and that the state law is invalid under the First Amendment;

      D.     Award attorney fees and costs to Plaintiffs; and

      E.     Grant Plaintiffs such additional or different relief as is just and proper.


June 23, 2025               Respectfully submitted,

                      */s/ Ryan G. Koopmans*
                      Ryan G. Koopmans
                      KOOPMANS LAW GROUP, LLC
                      500 East Court Ave., Suite 420
                      Des Moines, IA  50309
                      Telephone: (515) 978-1140
                      Email: ryan@koopmansgroup.com

                      Anthony F. Shelley (*pro hac vice* application forthcoming)
                      Joanne Roskey (*pro hac vice* application forthcoming)
                      DeMario M. Carswell (*pro hac vice* application forthcoming)
                      MILLER & CHEVALIER CHARTERED
                      900 Sixteenth St., NW
                      Washington, DC  20006
                      Telephone:  (202) 626-5800
                      Email: ashelley@milchev.com

                      *Counsel for Plaintiffs Iowa Association of Business and Industry, Iowa Bankers Benefit Plan, Iowa Laborers District Council Health and Welfare Fund, Des Moines Orthopaedic Surgeons PC, and Iowa Spring Manufacturing & Sales Company*