# Exhibit 4

IOWA ASSOCIATION OF BUSINESS AND
INDUSTRY, IOWA BANKERS BENEFIT
PLAN, IOWA LABORERS DISTRICT
COUNCIL HEALTH AND WELFARE FUND,
DES MOINES ORTHOPAEDIC SURGEONS
PC, and IOWA SPRING MANUFACTURING
& SALES COMPANY,

        *Plaintiffs,*

        v.

DOUG OMMEN, in his official capacity as
Insurance Commissioner of Iowa,

        *Defendant.*

No. 4:25-cv-00211-RGE-WPK

## DECLARATION OF MIKE FULLER IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1.    I make this declaration in support of Defendant Doug Ommen's opposition to Plaintiffs' Motion for a Preliminary Injunction regarding Senate File 383.

2.    I am the President of GRX Holdings and have been a practicing pharmacist in the state of Iowa for 28 years.

3.    GRX holdings provides integrated, quality pharmacy care to underserved communities across Iowa in 27 independent pharmacy locations, including (1) Medicaps across Iowa; (2) Community Pharmacies in Rockwell City, Sac City, Lake City, Gowrie, Dunlap, and Lake View; (3) Oakland Pharmacy; and (4) Stuart Pharmacy.

4.    GRX provides critical pharmacy services to over 100,000 Iowans annually. In addition to providing Iowa residents and communities with immunizations, telepharmacy services, prescription counseling, medication delivery, adherence packaging, compliance services, and

medical equipment, our pharmacies fill over 1.7 million prescriptions annually.

5.      Our company mission is to provide integrated pharmacy services to promote patient health and wellness in underserved rural and urban communities. We understand the value of the patient-pharmacist relationship and how vital a local pharmacy is to the health of a community. That is why we are dedicated to reducing the void in pharmacy patient care that exists today in many rural and urban communities.

6.      This void has directly resulted from harmful PBM practices. Each of our pharmacies provides prescriptions to patients who utilize PBMs every day and are bound by provider agreements (PBM contracts, which are take-it-or-leave-it) to sell prescriptions to patients at a total reimbursed amount that is *less* than our price to procure the medication.

7.      This is worth stating again: Every day, each of our 27 pharmacies sells prescriptions to patients for which we receive reimbursements lower than the cost to us of procuring the medication. In other words, we lose a lot of money by providing a valuable service.

8.      Of the 1.7 million prescriptions that we fill annually, between 5% and 10% end up being prescriptions we lose money on, just based on our price to procure (that is, before considering the additional cost to dispense or package).

9.      The number of prescriptions that we fill that are not profitable is much higher when accounting for our cost to fill prescriptions. Iowa has determined that the total cost to fill (including keeping the lights on, paying our team members a fair salary/wage, and paying our lease) to be $10.68. Depending on the pharmacy, even with the passage of Senate File 383, 35% to over 50% of our prescriptions may still end up being underwater prescriptions. Without it, it is even worse.

10.      One of our independent pharmacies was recently selling a prescription to one of our valued patients at a loss of $325 for one 30-day supply for a generic prescription. To be clear,

the pharmacy does not have the option of simply declining to fill and sell the prescription. The provider agreement requires the pharmacy to dispense and sell all prescriptions no matter how much the pharmacy loses. If the pharmacy breaks the provider agreement, the PBM will threaten immediate termination of the agreement and removal from their network. This has forced a significant number of pharmacies in Iowa to close or stop carrying critical medications that patients need.

11.     Senate File 383 helps level the playing field by requiring fair reimbursement based on National Average Drug Acquisition Cost plus a professional dispensing fee. The law provides essential protections to independent pharmacies like mine, ensuring patients can continue to access care in their communities. Without these protections, I know more pharmacies will be forced to close, particularly in rural areas, harming patient access to essential medications.

12.     Currently, we are being inundated with requests to purchase or even just accept the patient files of rural and urban pharmacies due to their inability to stay open. In many cases, we do not have a business model that allows us to operate even at a breakeven point to provide for these communities and patients.

13.     If Senate File 383 is blocked or delayed by an injunction, the harmful PBM practices described above will continue unchecked. This will further destabilize community pharmacies and reduce access to care for Iowa patients. It is clear to me that Senate File 383 is necessary to protect Iowa patients, pharmacies, and communities.

14.     The statements above are true and based on my personal knowledge and professional experience.

15.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of July, 2025, in West Des Moines, Iowa.

Mike Fuller, PharmD