# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

IOWA ASSOCIATION OF BUSINESS AND
INDUSTRY, IOWA BANKERS BENEFIT
PLAN, IOWA LABORERS DISTRICT
COUNCIL HEALTH AND WELFARE FUND,
DES MOINES ORTHOPAEDIC SURGEONS
PC, and IOWA SPRING MANUFACTURING
& SALES COMPANY,

*Plaintiffs*,

v.

DOUG OMMEN, in his official capacity as
Insurance Commissioner of Iowa,

*Defendant*.

No. 4:25-cv-00211-RGE-WPK

**DECLARATION OF SCOTT KNOER IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1. I am the Chief Pharmacy Officer at MercyOne, a non-profit integrated health system in Iowa and surrounding communities, with locations in Iowa and Illinois. It is part of the larger Trinity Health system. MercyOne offers a wide range of healthcare services, including pharmacies, hospitals, clinics, and other health facilities.

2. In my role, I am responsible for providing leadership, oversight, and strategic direction for Pharmacy Business Operations and Clinical Services across Iowa. This includes implementing strategic and operational initiatives, ensuring performance excellence in quality, safety, service, affordability, and technology, and overseeing compliance, auditing, pharmaceutical supply chain, and pharmacy business operations.

3. Through this role, I have personal knowledge about the adverse impact that PBMs have had on our pharmacies and others.

4. I make this declaration on behalf of MercyOne in support of Defendant Doug Ommen's opposition to Plaintiffs' Motion for a Preliminary Injunction.

5. I have been exposed on a day-to-day basis to the harm to MercyOne from PBMs and have direct knowledge of how that harm manifests, including:

    a. Underwater reimbursements, where our pharmacies are paid below the cost to dispense medications by PBMs, make our pharmacy business model unsustainable. For example, in April 2025, 24% of all claims were reimbursed below drug acquisition cost at our MercyOne Cli. And even that metric understates the problem because it fails to account for any professional services provided or overhead costs. As you can imagine, it's very difficult to sustain a business when 24% of all claims fail to cover the cost of goods sold.

    b. Steering practices, where patients are forced or strongly incentivized to use PBM-owned pharmacies, resulting in patients switching away from our pharmacies for reasons unrelated to quality of service and care. These practices are quite common due to the market power of PBMs and result in reduced access to pharmacies in rural areas for patients as pharmacies close. They are also very disruptive to patients who are forcibly made to switch pharmacies and often miss their dosage of critical medication in the transition.

    c. PBM-imposed exclusion from pharmacy networks limits access for patients to drugs from our pharmacies and destabilizes provider networks by interfering with their ability to select the appropriate pharmacists. In recent years, MercyOne has been restricted from providing specialty pharmacy care through our onsite specialty pharmacy to commercial patients of Wellmark BCBS/CVS and OptumRx by our onsite specialty pharmacy. That is to the detriment of patients because we are faster than other pharmacies.

Our local specialty pharmacy has an average turnaround time of 4.5 days from the time of order to the time a medication is received by the patient. While turnaround time by PBM-owned pharmacies is not available publicly, our patients and nurses report significant increases in care quality and reduction in time to receiving their therapies when receiving their medications from local MercyOne specialty pharmacies in Waterloo and Davenport.

   d.  PBM re-definition of "specialty" medications, coupled with PBM-imposed requirements that patients receive those drugs exclusively by mail from PBM-affiliated pharmacies, have resulted in patients switching away from our pharmacies even when their needs would be better (and more quickly) met by our pharmacies, which are integrated with provider networks. For example, in our Mason City and Dubuque markets, we have several pharmacies that are located within our primary care and specialty care clinics. This strategy allows patients to complete their visit and receive pharmacy care prior to leaving. For patients in our rural communities such as Greene, Dyersville, and Clear Lake, this proximity improves health outcomes by linking provider visits with pharmacy care. However, when medications are classified as "specialty" our local rural pharmacies are unable to link the provider visit with pharmacy care and furthermore, the specialty classification requires physician follow up with patients who are now-required to use external PBM-owned pharmacies, making care coordination difficult at best.

   e.  Finally, specialty pharmacy restrictions create barriers for patients needing complex therapies through trusted, local providers. For example, our specialty pharmacy in Davenport has been ACHC accredited (Accreditation Commission for Health Care) for multiple years. We have pharmacists and technicians with multiple years of specialty pharmacy experience and work directly with our on-site specialty clinics to deliver care

locally to our complex patients. Unfortunately, as a direct result of PBM practices not fully recognizing ACHC accreditation, we recently went through the cumbersome process of receiving URAC (Utilization Review Accreditation Commission) accreditation. This additional accreditation step for a pharmacy already holding a nationally recognized specialty pharmacy accreditation simply imposes unnecessary barriers to specialty pharmacy care for local Iowa patients.

6. Senate File 383 must not be enjoined because it fixes many of the most troubling abuses by PBMs, by:

   a. Banning PBMs from using financial incentives and penalties to direct patients toward certain pharmacies (that are affiliated with PBMs).

   b. Mandating fair reimbursement that is approximately equal to the average acquisition cost of the drug plus a set dispensing fee of $10.68 for each prescription.

   c. Prohibiting PBMs from charging insurers more than they reimburse pharmacies and mandating return of all rebates to health plan sponsors.

7. These measures are necessary to optimize patient access to high-quality, cost effective, and convenient care.

8. The statements above are true and based on my personal knowledge and experience.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of July, 2025, in Des Moines, Iowa.

_____
Scott Knoer, PharmD, MS, FASHP,
Chief Regional Pharmacy Officer, MercyOne