## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF IOWA

|  |  |  |
|---|---|---|
| IOWA ASSOCIATION OF BUSINESS AND INDUSTRY, *et al.*, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 4:25-cv-00211 |
| v. | ) ) | |
| DOUG OMMEN, in his official capacity as Insurance Commissioner of Iowa, | ) ) ) ) | |
| *Defendants*. | ) ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF
## THEIR MOTION FOR PRELIMINARY INJUNCTION

Ryan G. Koopmans
KOOPMANS LAW GROUP, LLC
500 East Court Ave., Suite 420
Des Moines, IA  50309
Telephone:  (515) 978-1140
Email:  ryan@koopmansgroup.com

Anthony F. Shelley (*pro hac vice* admission)
Joanne Roskey (*pro hac vice* admission)
DeMario M. Carswell (*pro hac vice* admission)
MILLER & CHEVALIER CHARTERED
900 Sixteenth St., NW
Washington, DC  20006
Telephone:  (202) 626-5800
Email:  ashelley@milchev.com

*Counsel for Plaintiffs Iowa Association of Business and Industry, Iowa Bankers Benefit Plan, Iowa Laborers District Council Health and Welfare Fund, Des Moines Orthopaedic Surgeons PC, and Iowa Spring Manufacturing & Sales Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ...................................................................................................................1

I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ....................................1

     A.     Plaintiffs Have Not Brought a Facial Challenge, But Challenge SF 383 as Applied to Plaintiffs.........................................................................1

     B.     Plaintiffs Have Standing ......................................................................3

     C.     Plaintiffs Do Not Lack a Cause of Action .............................................6

     D.     SF 383's Purposes Cannot Save It from Preemption................................7

     E.     The Majority of SF 383's Provisions Are Preempted by ERISA ...........8

          1.     *The Commissioner Errs in His Statement of the ERISA-Preemption Standard* ..................................................................8

          2.     *As Applied to Self-Funded ERISA Plans, Provisions of SF 383 Have a "Connection with" ERISA Plans and Are Preempted* ..................................................................10

          3.     *As Applied to Self-Funded ERISA Plans, at Least One Provision of SF 383 Makes a "Reference to" ERISA Plans and Is Preempted* .........................................................17

          4.     *As Applied to Insured ERISA Plans, SF 383 Provisions Are Preempted* ..................................................................18

     F.     Provisions of SF 383 Are Invalid Under the First Amendment............19

     G.     The Illegal Parts of SF 383 Are Inseverable from the Rest ...................21

II.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM, AND THE BALANCE OF THE EQUITIES FAVORS PLAINTIFFS ...............................................23

III.     THE COURT SHOULD EXTEND RELIEF TO ALL PARTIES (INCLUDING ABI'S MEMBERS) AND THEIR CONTRACTORS AND OTHER AGENTS AND SHOULD CONTINUE TO DECLINE TO AFIX AN INJUNCTION BOND...............................................................................24

CONCLUSION..............................................................................................................25

CERTIFICATE OF SERVICE ........................................................................... *Post*

## ARGUMENT

In his opposition brief, the Commissioner largely sticks to Plaintiffs' likelihood of succeeding on the merits, leveling a litany of procedural and substantive arguments, none of which ultimately succeeds. Plaintiffs address those arguments first, then briefly turn to the equities and the scope of the preliminary injunction to which they believe they are entitled.

## I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.    Plaintiffs Have Not Brought a Facial Challenge, But Challenge SF 383 as Applied to Plaintiffs

The Commissioner's main argument – indeed, central to almost every aspect of his brief – is that Plaintiffs have brought a facial challenge to SF 383 and therefore must show that every application of the law is invalid. It is a clever strategy, used in an attempt to bump up the burden and to distract from the SF 383's obvious preemption and First-Amendment problems, but it mischaracterizes Plaintiffs' claims, the actual pleading, and the governing law.

First of all, Plaintiffs have not brought a  facial challenge. Their lawsuit is an as-applied challenge – *i.e.*, they allege certain parts of SF 383 are illegal as applied in their ERISA-plan circumstances, with the remainder of the law being invalid *as to them* because of its inseverability from the illegal parts.

While the word "facial" is the overall theme of the Commissioner's brief, with the word appearing over 50 times, Plaintiffs have never used it. To the contrary, the complaint openly states it is a challenge as applied to Plaintiffs and particularly self-funded and insured ERISA plans *only*. *E.g.*, Compl. ¶¶ 55, 62, 63 (ECF No. 1). Additionally, Plaintiffs' brief supporting preliminary relief likewise presents its arguments as an as-applied challenge. *E.g.*, Pls.' Br. in Supp. of TRO & Prelim. Inj. ("Pls.' Br.") at 25 (ECF No. 16) ("On these bases, Plaintiffs are likely to succeed on the merits in showing that ERISA preempts some or all of [SF 383's

provisions] as applied to self-funded ERISA plans.); *id.* (heading stating Plaintiffs similarly pursue preemption "as applied to insured ERISA plans") (italics and initial caps removed).

If there was any question, Plaintiffs' opposition to the Commissioners' earlier motion for a briefing schedule clarifies it:

> Though the Commissioner suggests that . . . Plaintiffs want SF 383 enjoined for the whole world, that is not Plaintiffs' request.  Plaintiffs seek . . . a TRO that extends just to the parties, thereby halting the Commissioner's enforcement of SF 383 *as to Plaintiffs* . . . .  *Plaintiffs do not seek to enjoin the statute as to non-ERISA entities, but only as applied to ERISA plans and those administering them*.  Insofar as anyone outside this case were to assert injury from non-compliance with SF 383 after July 1, such as a retail pharmacy, nothing in the TRO would prohibit it from separately seeking the injunctive relief SF 383 purports to authorize (*see* SF 383, § 3 (new Iowa Code § 510B.4B.2.a.)), though any of Plaintiffs would vigorously defend against any such cause of action.

ECF No. 9, at 2 (emphasis added).  Even if the complaint were "unclear" (it is not), the Court can utilize (as the Commissioner should have) what is stated in Plaintiffs' "brief[s] to clarify allegations."  *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (ERISA case).[1]

The Court understood this distinction in rendering the TRO, *see* Order Granting TRO ("TRO Order") at 7, 19-20 (ECF No. 17) (describing severability allegations), and likewise ordered relief *just to the parties* (and not "against non-parties"), as is consistent with an as-applied challenge.  *See id.* at 24-25.  Nothing has changed since then:  the case remains an as-applied challenge to SF 383.

In any event, the Commissioner makes too much of the facial versus as-applied issue in an area where it really does not have much, if any, meaning.  As the Supreme Court has warned, "the distinction between facial and as-applied challenges is not so well defined that it has some

---

[1] Plaintiffs also presented several declarations with the motion for a TRO and preliminary injunction, noting the consequences of SF 383 in specific circumstances.  Were this a facial challenge, there would be no occasion for Plaintiffs to focus on their particular difficulties.

automatic effect or that it must always control the pleadings and disposition in every case."
*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  While "[t]he distinction"
can be "instructive and necessary" in certain cases, even then it goes only "to the breadth of the
remedy employed by the Court, not what must be pleaded in a complaint."  *Id.*

ERISA itself makes clear that preemption applies *only* "insofar as" state laws "relate to"
ERISA plans.  29 U.S.C. § 1144(a).  That limiting language confirms that courts may – and
almost always do – enjoin a law's enforcement just *as applied to ERISA-governed plans*, even
when the statute's terms also apply to non-ERISA plans.  Indeed, virtually every state law that
has been held preempted *as applied to ERISA plans* also covers non-ERISA plans.  *See, e.g.,*
*Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 913 n.10 (8th Cir. 2005)
(holding that an Arkansas law is preempted as applied to ERISA but not non-ERISA plans).  The
Commissioner seems to suggest each of those cases was wrongly decided; they were not.  In
sum, the entire facial versus as-applied argument can be discarded for what it is:  a distraction.

## B.    Plaintiffs Have Standing

The Commissioner challenges Plaintiffs' standing to sue, but limited to the provisions in
SF 383 directed solely at PBMs, not those that additionally or singularly cover health benefit
plans and third-party payors.  *See* Def.'s Opp. to Mot. for Prelim. Inj. ("Def.'s Br.") at 10 (ECF
No. 31).  Plaintiffs, as health benefit plans and their sponsors, have standing, of course, to
challenge the several provisions of SF 383 that directly regulate health benefit plans and third-
party payors and the contracts they enter.  *E.g.*, SF 383 § 1 (new Iowa Code § 510B.1.4.); *id.* § 3
(new Iowa Code § 510B.4B.2.a, .b.); *id.* § 4 (new Iowa Code § 510B.8B.4.; *id.* § 6 (new Iowa
Code § 510B.8D.1., .2.).

As for the portions of SF 383 most directly aimed at PBMs, Plaintiffs have standing to
challenge those too.  The Eighth Circuit's decision in *Pharmaceutical Care Management Ass'n*

*v. Wehbi*, 18 F.4th 956 (8th Cir. 2021), straightforwardly holds that "a regulation of PBMs 'function[s] as a regulation *of an ERISA plan itself.*'" *Id.* at 966 (quoting *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 613 F.3d 179, 188 (D.C. Cir. 2010)) (emphasis added); *accord Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1195-96 (10th Cir. 2023), *cert. denied*, No. 23-1213, 2025 U.S. LEXIS 2554 (U.S. June 30, 2025).  As the Tenth Circuit said:  "[I]t would be 'practical[ly] impossib[le]' for an ERISA plan to manage its own pharmacy benefits and avoid using a PBM 'because it would mean forgoing the economies of scale, purchasing leverage, and network of pharmacies only a PBM can offer.'"  *Mulready*, 78 F.4th at 1195 (quoting *District of Columbia*, 613 F.3d at 188) (alterations in original).  If regulations of PBMs are tantamount to regulations of the ERISA plan itself, it follows that the ERISA plans necessarily "suffer[] an invasion of a legal protected interest" when the state regulates their PBMs.  Def.'s Br. at 9 (internal quotation marks and citation omitted).  Indeed, the *sine qua non* of standing is, as the Commissioner recognizes, "injury-in-fact" (Def.'s Br. at 10); and Plaintiffs have plausibly pled, and have already shown in declarations, enormous imminent financial injury from SF 383's provisions, including its PBM-aimed provisions.  *E.g.*, TRO Order at 7 (citing Decl. of Bradley W. Bartle (ECF No. 6-1)).[2]

More generally, the Eighth Circuit and other courts have regularly authorized ERISA plans themselves to bring preemption challenges to state laws directed at just their service providers.  Thus, in *Prudential Insurance Co. of Am. v. National Park Medical Center, Inc.*, 413

---

[2] Importantly, many of the restrictions on PBMs in SF 383 are put in terms of the PBM's actions vis-à-vis "covered persons."  *See* Compl. ¶ 24 (chart showing in bold the provisions addressed to covered persons). A "covered person" is defined as a "person participating in a health benefit plan that has a prescription drug benefit managed by a pharmacy benefits manager."  Iowa Code § 510B.1.4. (emphasis added). Accordingly, the PBM's relevant actions necessarily are under the auspices of the ERISA plan itself, only reinforcing that Iowa is regulating the ERISA plan in its regulation of the PBM.

F.3d 897, 901 (8th Cir. 2005), the company Tyson Foods, Inc., which "sponsors a self-funded, or self-insured, health benefit plan (the 'Tyson plan') for its employees," successfully challenged as preempted by ERISA a state any-willing-provider law that regulated only insurance companies. Tyson had standing because – similar to Plaintiffs' situation with their PBMs – "Tyson maintain[ed] various agreements with insurance companies under which the insurance companies may agree not only to perform third-party administrative and claims processing services for the Tyson plan but also to provide the plan access to various provider networks in the geographic areas in which Tyson's employees are located." *Id.* at 902. Likewise, in *Liberty Mutual Insurance Co. v. Donegan*, 746 F.3d 497, 502 (2d Cir. 2014), *aff'd sub nom. Gobeille v. Liberty Mut. Ins. Co.,* 577 U.S. 312 (2016), the Second Circuit (undisturbed later by the Supreme Court) held that an ERISA plan sponsor had standing to raise an ERISA-preemption challenge to a state reporting law applicable to its third-party administrator ("TPA").

The Commissioner claims that Plaintiffs lack standing because supposedly "there can be no actual or threatened enforcement of the PBM-focused sections of SF 383 against Plaintiffs," since "no Plaintiff is a PBM." Def.'s Br. at 10. But the Second Circuit considered and rejected a similar argument in *Donegan*. The Second Circuit noted that the ERISA plan there (as is standard) had an indemnification clause in its agreement with its TPA, so that the ERISA plan would hold the TPA "harmless for any financial charges 'arising from or in connection with' the Plan." *Donegan*, 746 F.3d at 502 (quoting plan / TPA agreement). The threat of enforcement against the TPA thus injured the ERISA plan just as much as the TPA itself, since the ERISA plan faced "indemnifying [TPA] for the ensuing civil penalties." *Id.*; *cf. S. Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592 (8th Cir. 2003) (collecting cases standing for proposition that "financial injury" directly related to enforcement against another entity met injury-in-fact

requirement).  No differently here, Plaintiffs' contractual agreements with their PBMs authorize indemnification for penalized actions by the PBM on behalf of the ERISA plan.  *See* Decl. of Chad J. Ellsworth (Plaintiff Iowa Bankers Benefit Plan), Ex. 1 at 24-25 (ECF No. 40 (sealed)); Decl. of Kirk Veenstra (Pella Corp., member of Plaintiff Iowa Association of Business and Industry), Ex. 1 at 22-23 (ECF No. 39-2).

Finally, the standing inquiry is no different for the First Amendment claim.  Of the three SF 383 provisions that Plaintiffs challenge under the First Amendment, only one is applicable just to PBMs (as opposed to being directed to health benefit plans or third-party payors).  *See* SF 383 § 3 (new Iowa Code § 510B.4B.1.a.).  Nonetheless, again, the regulation of the speech of a PBM is, under *Wehbi*, tantamount to the regulation of the ERISA plan itself.  *See Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 977 (10th Cir. 2020) (plaintiff has standing to challenge on First-Amendment grounds regulations applying to its independent contractors); *Int'l Ass'n of Firefighters of St. Louis v. City of Ferguson*, 283 F.3d 969, 973 (8th Cir. 2002) (finding that plaintiff had standing to challenge ordinance infringing on the First-Amendment rights of her husband because threat of enforcement against him threatened economic harm to her).[3]

### C.    Plaintiffs Do Not Lack a Cause of Action

The Court can make quick work of the Commissioner's argument that Plaintiffs lack "a cause of action" to bring their claims.  Under the doctrine of *Ex parte Young,* it is well-settled that plaintiffs have a cause of action in equity to prevent state officials from violating the Supremacy Clause by enforcing a preempted state law.  *See Shaw v. Delta Air Lines*, 463 U.S.

---

[3] The Commissioner prefers a suit brought by PBMs rather than the ERISA plans and their sponsors.  *See* Def.'s Br. at 11.  That gets things exactly backwards.  ERISA protects employers, their plans, and their plans' beneficiaries, not in the first instance intermediaries like PBMs, and it should be the former who vindicate preemption for themselves and those acting on their behalf, not PBMs who raise ERISA preemption vicariously.

85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground

that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause

of the Constitution, must prevail, thus presents a federal question which the federal courts have

jurisdiction under 28 U.S.C. § 1331 to resolve."); *Armstrong v. Exceptional Child Ctr., Inc.*, 575

U.S. 320, 326 (2015) ("[W]e have long held that federal courts may in some circumstances grant

injunctive relief against state officers who are violating, or planning to violate, federal law.");

*Bio Gen LLC v. Sanders*, No. 23-3237, U.S. App. LEXIS 15491, at *14-18 (8th Cir. June 24,

2025) (analyzing merits of preemption claim against state officials under *Ex parte Young*).  And

for their First Amendment claim, Plaintiffs properly invoke 42 U.S.C. § 1983.  *See* Compl. ¶ 15.

The Commissioner's assertion that Plaintiffs lack a cause of action to challenge PBM-

regulating provisions of SF 383 is really (by the Commissioner's own admission) a rehash of his

contention that Plaintiffs lack standing to sue about those parts of the law, which Plaintiffs have

already addressed.  *See* Def.'s Br. at 11 (stating that Plaintiffs lack cause of action "for similar

reasons" as allegedly lacking standing).  Because the PBM-focused provisions injure Plaintiffs,

they may use whatever causes of action are available to them to vindicate their interests.  *See*

*United States v. Texas*, No. 24-50149, --- F.4th ---, 2025 U.S. App. LEXIS 16462, at *46 (5th Cir.

July 3, 2025) ("The Supreme Court has on multiple occasions allowed actions in equity to

proceed based on *Ex parte Young* even when the government was not enforcing the challenged

law directly against the plaintiff.").

### D.    SF 383's Purposes Cannot Save It from Preemption

The Commissioner spends the "Background" section of his brief extolling the benefits of

SF 383, mostly for "rural" pharmacies, and reproaching PBMs.  *See* Def.'s Br. at 4.  The

discussion is beside the point.  ERISA and the First Amendment have laudable purposes as well,

and theirs trump any associated with state laws.  It may be that "[b]y passing laws like [Iowa's],

7

States have repeatedly expressed their overwhelming displeasure with the power of PBMs over their citizens' healthcare decisions." *Mulready*, 78 F.4th at 1209.  In a court of law, however, the focus is solely on "whether [SF 383's] . . . challenged provisions veer into the regulatory lanes Congress has reserved for itself." *Id.*  As the Commissioner notes, forty-five states expressed their disapproval of *Mulready*'s ERISA-preemption holdings (Def.'s Br. at 6 (citing states' *amicus* brief in Supreme Court in *Mulready*); yet, the United States recommended against certiorari, *see* Pls.' Br. at 20-21 n.12, and the Supreme Court ultimately denied certiorari.  *See Mulready v. Pharm. Care Mgmt. Ass'n*, No. 23-1213, 2025 U.S. LEXIS 2554 (June 13, 2025). Iowa can resort to Congress, "the architect of ERISA," if  it dislikes the judicial outcome. *Mulready*, 78 F.4th at 1209.[4]

      **E.**      **The Majority of SF 383's Provisions Are Preempted by ERISA**

          *1.*     *The Commissioner Errs in His Statement of the ERISA-Preemption Standard*

In a telling concession that the typical standards for ERISA preemption pose serious trouble for SF 383, the Commissioner at the start asserts that the governing test for "connection with" preemption comes from a concurring opinion by Justice Thomas (and joined by no other Justice) in *Rutledge v. Pharmaceutical Care Management Ass'n*, 592 U.S. 80, 92 (2020); *see* Def.'s Br. at 17.  Justice Thomas's "textual" approach (as the Commissioner calls it, *see id.* at 17) focused on whether ERISA already had a provision on point that could supersede a new state law, prompting the Commissioner then to state repeatedly that the state law must "overlap" with ERISA requirements for there to be preemption.  *E.g.*, Def.'s Br. at 17, 18, 33, 35.  But the

---

[4] The Commissioner also does not describe SF 383's full purposes and effects.  The law not only aims to assist independent, rural pharmacies, but benefits "a large interstate retail grocery and pharmacy store," namely, "Hy-Vee," which also provides a supporting declaration for the Commissioner's brief.  TRO Order at 5 n.2.

Supreme Court has never adopted such a standard; in fact, it has expressly eschewed a strictly textual approach. *See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* ("*Travelers*"), 514 U.S. 645, 656 (1995) ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."); *accord Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016).

Instead, the Supreme Court has developed a series of more specific tests for determining "connection with" preemption, as fully delineated in Plaintiffs' earlier brief. *See* Pls.' Br. at 12-17. These tests ask whether a state law dictates an ERISA plan's design and structure, whether it affects a central matter of plan administration, whether it hinders nationally uniform plan administration, whether it presents alternative enforcement mechanisms, or whether it causes acute financial difficulty for an ERISA plan. *See id.* As Plaintiffs showed in their earlier brief, and reiterate later here, various SF 383 provisions fail under one or more of these standards (and the remainder succumb for lack of severability, thus also not operative *against Plaintiffs*).

The Commissioner at the outset also exaggerates the holdings in *Rutledge* and *Wehbi*, suggesting that those cases permit states essentially without constraint to regulate PBMs and the health plans they assist. Def.'s Br. at 17-21, 25-26. The Court in its earlier TRO Order, and many courts in other Circuits, have correctly recognized that *Rutledge* and *Wehbi* are decisions limiting ERISA's preemption of state laws regulating *rate and cost* issues between *PBMs and pharmacies*, not state laws regulating design and administration matters or the relationships among they key ERISA parties, like the plan, its sponsor, and the plan's participants and beneficiaries. *See* TRO Order at 16-17 ("[u]nlike the permissible state law in *Rutledge*, the Court concludes SF 383 reaches beyond price control and requires sponsors to structure their

plans in particular ways," and "the Court finds nothing in the Eighth Circuit's application of *Rutledge* in *Wehbi* to call this conclusion into doubt"); *Mulready*, 78 F.4th at 1200 ("Our holding today adheres to *Rutledge*. Unlike Arkansas's reimbursement rate regulations, Oklahoma's network restrictions do more than increase costs."); *McKee Foods Corp. v. BFP Inc*., No. 1:21-cv-279, 2025 U.S. Dist. LEXIS 60638, at *25, *27 (E.D. Tenn. Mar. 31, 2025) ("The Commissioner, however, reads too much into *Rutledge* . . . . This direct regulation of benefit structure distinguishes any-willing-provider laws from the law at issue in *Rutledge*.").

      2.     *As Applied to Self-Funded ERISA Plans, Provisions of SF 383 Have a "Connection with" ERISA Plans and Are Preempted*

For extended pages, the Commissioner proceeds provision by provision to try to show that SF 383's various provisions have no "connection with" ERISA plans and that ERISA, therefore, does not preempt them. Yet, his assertions mostly are conclusory and dependent on viewing *Rutledge* and *Wehbi* (wrongly) as outsized decisions permitting just about any sort of state regulation of PBMs and the health plans and sponsors depending on them. Plaintiffs more specifically address the Commissioner's assertions below, in the order in which the provisions appear in SB 383 (which is the same ordering that Plaintiffs used in their earlier brief).

      a.     <u>*Anti-Discrimination Provision (SF 383 § 1 - new Iowa Code § 510B.1.4.)*</u>. The Commissioner does not seriously contest that ERISA preempts state anti-discrimination requirements, since that was the precise holding of *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983); *see* Pls.' Br. at 18. Instead, the Commissioner makes a curious argument that the new anti-discrimination provision does not actually prohibit some of the discrimination it purports to prohibit. He says that the discrimination about which Plaintiffs are concerned – namely, "limit[ing] plan administrators from telling a beneficiary which pharmacy is in their best interest," Def.'s Br. at 28 – is only barred under the anti-promotion and anti-comparison (with

mail-order pharmacies) language addressed to PBMs in new Iowa Code § 510B.4B.1.a., *see* Def.'s Br. at 28, not in the "generally applicable non-discrimination requirement" applicable to health benefits plans, third-party payors, health carriers, and PBMs alike. *Id.* at 27.

But the plain meaning of the anti-discrimination provision indicates otherwise: an ERISA plan and its sponsor may not discriminate in the "referral" of one provider over another (*i.e.*, the exact words of new Iowa Code § 510B.1.4), which necessarily includes promoting a participant's or beneficiary's use of specific providers over others based on price, safety, or convenience. And just because later parts of SF 383 (such as the anti-promotion / anti-comparison provision) "specifically" outlaw certain discrimination for PBMs does not mean that the anti-discrimination provision does not likewise do so: it appears to be a general "catchall" that "act[s] as a safety net, offering . . . relief for injuries caused by violations that [the statute] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

Regardless, the anti-discrimination provision does not just prohibit discrimination by making referrals to specific pharmacies, but also outlaws discrimination "with respect to [pharmacy] *participation*, referral, *reimbursement of a covered service, or indemnification*." New Iowa Code § 510B.1.4. (emphasis added). Plaintiffs are injured by *all* of those applications (not just the anti-referral term), and ERISA – consistent with *Shaw* – preempts each aspect of the anti-discrimination provision as applied to Plaintiffs.

b.  *Limitations on Guidance for Participants and Beneficiaries (SF § 3 – new Iowa Code § 510B.4B.1.a.).*  The anti-promotion / anti-comparison requirement in new Iowa Code § 510B.4B.1.a., which is applicable to PBMs, works like the anti-referral component in the general anti-discrimination provision, which has broader application; that is, it prohibits promoting one provider over another, especially mail-order pharmacies over retail pharmacies. As noted in

Plaintiffs' earlier brief, these sorts of provisions interfere with central matters of plan administration, because they impede a fiduciary from advising participants and beneficiaries of options that are in their best financial interest and that would help defray the plan's costs. *See* Pls.' Br. at 18-19.

The Commissioner's response is that PBMs are not fiduciaries, so that fiduciary obligations cannot come into play. Def.'s Br. at 29. However, the anti-referral provision is applicable to ERISA plans and sponsors, not just PBMs, and it (at a minimum) implicates fiduciary duties insofar as it prohibits ERISA plans and fiduciaries from making recommendations to participants and beneficiaries (which is what the provision's plain reading indicates, *see supra* p. 11). Moreover, again, PBMs are the "functional equivalent" of the ERISA plan itself, *see supra* p. 4, so that an anti-promotion / anti-comparison prohibition on PBMs is the same as a prohibition on the ERISA plan itself. Hence, if Iowa could not directly regulate the ERISA plan itself in a manner that prevents the ERISA plan from executing its fiduciary duties, it cannot indirectly regulate the ERISA plan through the PBM who assists the ERISA plan in that manner either.

    c.   *Network Restrictions (SF 383 § 3 – new Iowa Code §§ 510B.4B.1.b. &*
*510B.4B.2.a.).* ERISA preempts the two any-willing-pharmacy provisions in SF 383 – one applicable to third-party payors and one to PBMs – because they "strik[e] at the heart of network and benefit design." *Mulready*, 78 F.4th at 1209. Every court so far to have considered the issue (and the United States' Solicitor General as well) has determined that ERISA preempts state any-willing-provider laws, including the Court in its TRO decision and the Eighth Circuit previously. *See* TRO Order at 15-17; Pls.' Br. at 19-20 (citing *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005)); Pl.'s Br. at 20-21 n.12 (noting position of United

States in *Mulready* Supreme Court proceedings); *Mulready*, 78 F.4th at 1197-98; *Ky. Ass'n of Health Plans v. Nichols*, 227 F.3d 352, 363 (6th Cir. 2000), *aff'd sub nom. Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003); *CIGNA Healthplan of La., Inc. v. La. Ex rel. Ieyoub*, 82 F.3d 642, 648 (5th Cir. 1996); *McKee*, 2025 U.S. Dist. LEXIS 60638, at *26-27.[5]

In the face of this case law, the Commissioner asserts that *Wehbi* necessitates that the Court now buck the trend. But *Wehbi* did not involve an any-willing-pharmacy provision, and *Wehbi* cannot credibly be stretched to cover "structural constraints on plan design that are not *de minimis* and that reach central matters of plan design and administration." TRO Order at 17.

d.      <u>*Cost-Sharing Requirements (SF 383 § 3 – new Iowa Code §§ 510B.4B.1.a., 510B.4B.1.f.); SF 383 § 4 (new Iowa Code §§ 510B.8.3., 510B.8.6.-.7., § 510B.8.7.)*</u>.

Collectively, SF 383's cost-sharing provisions prohibit cost-sharing incentives for the use of mail-order pharmacies, mandate credit for a participant's or beneficiary's cost-sharing regardless of the payment source, such as a drug manufacturer's coupon rather than the individual's own funds, and set cost-sharing rules for high-deductible health benefit plans. *See* Pl.'s Br. at 20. Again, Courts to have considered the issue have uniformly held that "cost-sharing arrangements" are "key benefit designs for an ERISA plan" and, therefore, are off-limits to the states due to

---

[5] The Commissioner suggests *Prudential* is bad law because it had a "reference to" element that supposedly no longer jibes with modern ERISA precedent. *See* Def.'s Br. at 29. While it may be true that *Prudential* applied the "reference to" prong, *Mulready* explains how state any-willing-provider statutes remain preempted under the Supreme Court's current preemption jurisprudence. *See Mulready*, 78 F.4th at 1197-98. Absent irreconcilability with current Supreme Court precedent, a district court in this Circuit is bound to follow Eighth Circuit case law. *See Pereida v. Barr*, 916 F.3d 1128, 1133 (8th Cir. 2019), *aff'd sub nom. Pereida v. Wilkinson*, 592 U.S. 224 (2021). Relatedly, the Commissioner asserts that the Court should not follow *Nichols* and *CIGNA* on the theory that they purportedly rely on "reference to" analysis. *See* Def.'s Br. at 29-30. The Commissioner is clearly wrong on this front, as *Mulready* explains that both of those decisions rest on the Fifth and Sixth Circuits' findings that any-willing-provider laws impermissibly mandate plan "structures," which is a "connection with" concept. *See Mulready*, 78 F.4th at 1197-98.

ERISA preemption.  *Mulready*, 78 F.4th at 1198; *McKee*, 2025 U.S. Dist. LEXIS 60638, at *27

(finding that ERISA preempted state-law provisions "forbid[ding] McKee and its PBM from

encouraging plan participants to use specific pharmacies through either the carrot of lower

copays and other incentives or the stick of higher copays and additional fees").  This time, the

Commissioner's only response is that *Rutledge* demands a different result, *see* Def.'s Br. at 21-

23; but *Rutledge* did not involve any state-law cost-sharing prohibitions.

       e.     <u>*Reporting and Notice Requirements (SF 383 § 3 – new Iowa Code*</u>

<u>*§§ 510B.4B.2.b., 510B.4B.2.a.; SB § 5 – new Iowa Code § 510B.8B.4.a., .b.)*</u>.  The

Commissioner fails to grapple with the actual nature of the reporting and notice requirements in

SF 383.  He says they are "more like those in *Wehbi*," Def.'s Br. at 32, where the reporting was

solely elective and exclusively to private parties, when SF 383, in reality, mandates reporting *to

the government* or *non-elective* notices to private parties, as in *Gobeille* and *Pharmaceutical

Care Management Ass'n v. Gerhart*, 852 F.3d 722, 731 (8th Cir. 2017).  *See* Pls.' Br. at 21.

Furthermore, the Commissioner, without support, makes the outlandish statement that the

reporting and notice requirements are not "burdensome" – for instance, mandating "merely" a

"notice requirement related to pharmacy network curation."  Def.'s Br. at 33.  To the contrary, it

is no small feat for a third-party payor to send *every* participant and beneficiary a listing of all

participating pharmacies, and also to send potentially *every* pharmacy in the state a notice of the

right to participate in the health benefit plan's network; one of Plaintiffs' declarants has

estimated the cost of the any-willing-provider provisions in SF 383, including its notice

requirement, in the millions of dollars for the Iowa health-benefit-plan community.  Decl. of

Bradley W. Bartle ¶¶ 16-22 (ECF No. 6-1).  Similarly without any support, the Commissioner

maintains that the reporting and notice requirements do not involve "confidential methodologies

for reimbursement amounts," Def.'s Br. at 33; but the requirements for network participation –

from the pricing discounts necessitated, to the extent of balance-billing prohibitions designed to

help participants and beneficiaries using network pharmacies, to the accreditation requirements,

to the disciplinary features for agreement-breaching pharmacies are all proprietary information

of the particular health benefit plan.[6]

Next, the Commissioner suggests that a reporting or notice requirement is preempted

only if it "overlap[s]" with something "ERISA requires from third-party payors." Def.'s Br. at

33. *Gobeille* does not establish any such standard, noting simply that reporting imposed by a

state on an ERISA plan intrudes on "'central matters of plan administration,'" 577 U.S. at 323

(quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)), and necessitates preemption "to

prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on

plans." *Id.* The only exception might be for *de minimis* reporting, per *Wehbi*, which is not what

is involved here. *See* 18 F.4th at 969.

f. *Plan-PBM Contract Limitations (SF 383 § 4 – new Iowa Code § 510B.8.4.; SF
383 § 6 – new Iowa Code § 510B.8D.1.)*. The Commissioner does not address Plaintiffs'

showing that SF 383's requirement for pass-through pricing in third-party payor / PBM contracts

and concerning rebate payments intrude upon central matters of plan administration because they

implicate service-provider compensation. *See* Pl.'s Br. at 22. The Court, therefore, should deem

the point conceded. Insofar as the Commissioner again asserts *Rutledge* controls on this issue,

he is wrong, as *Rutledge* involved no contract requirements between ERISA plans and PBMs.

---

[6] Exemplifying the sensitivity of the commercial relationships between the various players, one of the
declarations associated with this Reply properly is being filed under seal.

g.    *Dispensing Fee – SF 383 § 5 (new Iowa Code § 510B.8B.3.)*.  The Commissioner criticizes Plaintiffs' reliance on the Supreme Court's use of the word "acute" in their showing that the dispensing fee causes acute financial distress for ERISA plans and, on that basis, is preempted.  While the Commissioner elsewhere champions a "textual" approach to preemption, *see supra* p. 8, he here dislikes the dictionary definition of "acute" as sharp, sudden, and short-lived.  *See* Def.'s Br. at 22.  More important, the Commissioner does not contest that the legislature's insistence on a July 1, 2025, effective date causes acute (as in sharp and sudden) harm to ERISA plans, asserting just that Plaintiffs supposedly "concede the dispensing fee would not be preempted if only it took effect later." *Id.*  The fact is that the dispensing fee does *not* take effect later, and, absent the Legislature amending the effective date, it cannot take effect now, consistent with the prescription that ERISA preempts state laws causing acute financial harm.

h.    *Enforcement Mechanisms – SF 383 § 3 (new Iowa Code §§ 510B.4., 510B.4B.2.a.)*.  Contrary to the Commissioner's assertions, *Rutledge*'s approval of a limited appeal remedy whereby a pharmacy (a non-ERISA party) could petition a PBM (a non-ERISA party) for adjustment to reimbursement levels, *see* 592 U.S. at 84, does not signal approval for the enforcement remedies in SF 383.  As noted in Plaintiffs' brief (at 23-24), the enforcement remedies in SF 383 authorize, in the one instance, covered persons (an ERISA party) to sue third-party payors (another ERISA party), and, in the other instance, authorize pharmacies to appeal to PBMs *any matter*, including complaints about non-compliance with the aspects of SF 383 applicable to health benefit plans (an ERISA party) and third-party payors (an ERISA party).  These differences with the *Rutledge* appeal remedy are dispositive and trigger preemption:  the SF 383 remedies cannot be characterized as engendering "operational inefficiencies" and "merely increas[ing] costs," *Rutledge*, 592 U.S. at 91; rather, each of them "duplicates,

16

supplements, or supplants the ERISA civil enforcement remedy" available to the principal

ERISA parties. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

For these reasons, too, SF 383's enforcement remedies cannot be considered to involve a

"'legal duty independent of ERISA,'" Def.'s Br. at 34 (quoting *Aetna*, 542 U.S. at 214), given

that SF 383's remedies run to ERISA parties, not intermediaries and entities extraneous to

ERISA. And in any event, the independent-legal-duty requirement is a feature of the removal-

jurisdiction concept of "complete preemption," not the ordinary preemption applied in the

relevant part of the *Aetna* decision. *See Aetna*, 542 U.S. at 217 (resting in relevant part on

"*ordinary* principles of conflict pre-emption") (emphasis added). Last, to the extent the First

Circuit's decision in *Pharmaceutical Care Management Ass'n v. Rowe*, 429 F.3d 722 (1st Cir.

2005), suggests differently, it is at odds with *Wehbi*, which treats PBMs as the functional

equivalent of ERISA plans. *See* Def.'s Br. at 35 (arguing *Rowe* authorizes an "alternative

enforcement mechanism that targets PBMs because PBMs are not ERISA fiduciaries").

> 3.    *As Applied to Self-Funded ERISA Plans, at Least One Provision of SF 383 Makes a "Reference to" ERISA Plans and Is Preempted*

In addition to having a "connection with" ERISA plans, the provision in SF 383 requiring

pass through of rebates to an "employee plan sponsor as permitted by the federal Employee

Retirement Income Security Act" makes an express reference to ERISA plans. SF 383 § 4 (new

Iowa Code § 510B.8.4.). Though the Commissioner argues otherwise, the Supreme Court has

held that state laws "singl[ing] out or specially mention[ing] ERISA plans" – even if seeking to

help the plans – impermissibly refer to ERISA plans and are preempted, *Mackey v. Lanier*

*Collection Agency & Serv.*, 486 U.S. 825, 831 (1988), and Plaintiffs have already noted how

ERISA plans are integral to this portion of the relevant SF 383 section. *See* Pl.'s Br. at 22 n.13.

The Commissioner disparages Plaintiffs (Def.'s Br. at 35) for making this point in a footnote in

their earlier brief, rather than in upstairs text.  But the "reference to" argument is complementary

and duplicative of the "connection with" showing for this SF 383 provision; plus, rules

associated with raising arguments in appellate briefs are not apposite in district courts, especially

in fast-paced emergency briefing.

4.    *As Applied to Insured ERISA Plans, SF 383 Provisions Are Preempted*

The Commissioner effectively admits that just two aspects of SF 383 theoretically may fit

the test in *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003), for a saved state

insurance regulation – *i.e.*, "the any-willing-provider sections and network access cost-sharing

requirements."  Def.'s Br. at 38.  He seemingly agrees that the rest (like the anti-discrimination

principle, reporting and notice requirements, contracting requirements for third-party payor /

PBM contracts, enforcement provisions, etc.) have nothing to do with the spreading of risk

between insurer and insured, which is a necessity for a state law to constitute a saved state

insurance regulation under *Miller*.  And even with respect to these two parts of SF 383, the

Commissioner fails to recognize that they flunk the other part of the *Miller* test, which

necessitates that the state law be specifically directed at insurers.  *See* Pl.'s Br. at 25.  SF 383's

focus is not just on risk-bearing entities (like health benefit plans and health carriers), but also

PBMs, who are not insurers.  Indeed, one could say that the common denominator for all of SF

383's provisions is relationship to a PBM (again, not a risk-bearer), since the law applies not in

all health-benefit-plan situations, but only where the plan "has a prescription drug benefit

*managed by a pharmacy benefits manager.*"  Iowa Code § 510B.1.4. (definition of "covered

person") (emphasis added).

The Commissioner makes a novel argument that PBMs actually are insurers for purposes

of the savings clause "because they are third-party providers contracting their services to the

health insurance industry."  Defs.' Br. at 37.  The argument derives from the United States' brief

18

in the Tenth Circuit in *Mulready* (separate from the Solicitor General's *Mulready* brief in the Supreme Court). *See id.* But no court has ever accepted that argument. Most significant, as both the Commissioner and the United States recognize, the position is at odds the Eighth Circuit's post-*Miller* decision in *Prudential Insurance Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 912-13 (8th Cir. 2005), which this Court must follow. *See* Def.'s Br. at 37 (noting that United States has asserted *Prudential* "wrongly applied Supreme Court precedent").[7]

F.      **Provisions of SF 383 Are Invalid Under the First Amendment**

On the First Amendment, the Court should reject the Commissioner's remaining arguments, disregarding his chief, and erroneous, claim that Plaintiffs have attempted and failed to make out a proper facial challenge to SF 383. As to the anti-referral (new Iowa Code § 510B.1.4.) and anti-promotion (new Iowa Code § 510B.4B.1.a.) provisions, his only response on the merits to Plaintiffs' contention that these provisions prevent Plaintiffs from communicating truthful information to covered persons about their pharmacy benefits is to suggest that, actually, the anti-referral provision does not prevent such communications at all. Def.'s Br. at 43-44. As already explained, *see supra* p. 11, the Commissioner misreads the plain statutory text.

As to the notice requirement in new Iowa Code § 510B.4B.2.a., the Commissioner incorrectly claims that it should be subject to the standard of review in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), because it requires disclosing "purely factual and uncontroversial information." *Id.* at 651; Def.'s Br. 41. For one thing, the Eighth Circuit, as the

---

[7] The Commissioner also nowhere addresses the specific issues associated with Plaintiff Iowa Bankers Benefit Plan, which is a MEWA. The Court should therefore take as conceded the point that if the cost-sharing provisions were saved state insurance regulation, they would nonetheless fail to apply in a MEWA situation to the extent inconsistent with a fiduciary's obligation to adhere to current plan cost-sharing provisions. *See* Pls.' Br. at 27.

Commissioner seems to acknowledge, has affirmed that *Zauderer* only applies to "inherently misleading" commercial speech. Def.'s Br. at 41 (citing *1-800-411 Pain Referral Serv. LLC v. Otto*, 744 F.3d 1045, 1062 (8th Cir. 2014)). The speech compelled by the SF 383 notice provision does not remedy "inherently misleading" conduct because it requires disclosures to pharmacies with which third-party payors have *no relationship*. The Commissioner does not identify any misleading conduct that the notice requirement would remedy.

Next, the Commissioner's recourse again to *Pharmaceutical Care Management Ass'n v. Rowe*, 429 F.3d 294 (1st Cir. 2005), for support that the notice requirement should be reviewed under *Zauderer* is unavailing, because the provisions at issue in *Rowe* required disclosures to *customers* regarding relevant aspects of ongoing transactions between PBMs and their customers. *See id.* at 309-10. Elsewhere, a court recently analyzing a provision that similarly required disclosures to unrelated parties found that *Zauderer* is the improper framework when the regulated persons "are not already engaged in commercial speech to which the disclosures compelled . . . are appended." *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 724 F. Supp. 3d 1174, 1200 (D. Or. 2024).

Even under the *Zauderer* framework, though, the notice requirement fails scrutiny. The provision is not "reasonably related to the State's interest in preventing deception of consumers," 471 U.S. at 651, for the Commissioner admits that it has nothing to do with deception, defining the purpose of the provision as "allowing willing pharmacies fair opportunity to . . . participate in a network." Def.'s Br. at 42. And requiring the indiscriminate disclosure of commercially sensitive, competitively valuable plan terms is unduly burdensome, as both the implementation and the ramifications of disclosure would entail significant costs to third-party payors in order to allow pharmacies the chance to "review" third-party payors' plan terms. *Id.*

Under the proper, more exacting *Central Hudson* standard of review, the Commissioner simply cannot show that the notice requirement directly advances any substantial government interests, or that it is not more extensive than necessary. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). He claims that the state has a "substantial interest in promoting consumer choice and transparency and protecting against misleading practices that disrupt care," but he does not name any misleading practices, and it is unclear how the notice requirement directly promotes consumer choice when it requires disclosure to pharmacies, not to consumers. Def.'s Br. at 42.

### G.    The Illegal Parts of SF 383 Are Inseverable from the Rest

The Commissioner argues that even if some of the statute is unlawful, the remainder should stay in place. Def.'s Br. at 15-16, 44. SF 383 does, of course, have a severability provision, which states that "[t]he provisions of this division of this Act are severable pursuant to section 4.12." SF 383 § 8. In turn, Iowa Code § 4.12 adds that a "provision" or "the application thereof" found "invalid" is severable *if* the rest "can be given effect without the invalid provision or application." And even if state law might authorize severing, a federal court remains constrained by Article III of the Constitution, so that sometimes "a limited solution is not possible because it would entail quintessentially legislative work (in the case of a statute) or executive work (in the case of a regulation) that the Constitution does not empower federal courts to undertake." *Sisney v. Kaemingk*, 15 F.4th 1181, 1194 (8th Cir. 2021) (internal quotation marks and citation omitted). Under these state and federal standards, the Court should reject severability and invalidate the entirety of SF 383, as applied to ERISA plans.

Were the Court to strike all of the provisions based on ERISA preemption and the First Amendment that Plaintiffs challenge, very little of the statute would remain. Essentially, just the NADAC pricing for retail pharmacies, *see* SF 383 § 5 (amended Iowa Code § 510B.8B.1.), and a

provision allowing pharmacies to announce to customers that they "participate[] in the health benefit plan," *id.* § 3 (new Iowa Code § 510B.4B.2.c.), would remain in place.  Both provisions, though, are tied to others that the Court would have invalidated, as NADAC pricing appears to be part of a rate scheme that also involves the ERISA-preempted dispensing fee for retail pharmacies and the pharmacy-announcement authorization seems hardly useful or relevant if the Court strikes the any-willing-pharmacy provisions in the first place.

And if the Court strikes only some of the provisions that Plaintiffs have challenged, the remaining task – as the Court noted in its TRO decision, *see* TRO Order at 19 – becomes impermissibly legislative, with the Court needing to determine whether this provision or that provision would have been so important to legislators as to allow them to enact the statute without many of its key parts.  *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509-10 (2010) (holding that to "blue-pencil" a statute is to assume an "editorial freedom [that] belongs to the Legislature").

In any event, were the Court to invalidate *just* the anti-speech provisions of SF 383, then severing is barred simply under Iowa law, pursuant to the condition in Iowa Code § 4.12 that remaining parts must be able to "be given effect" in order to be severed from the illegal portions. The anti-speech parts of SF 383 are the provisions that prohibit or limit health benefit plans and third-party payors and their PBMs from disclosing truthful information comparing the higher costs at retail pharmacies with the alternatives, and Plaintiffs have challenged these provisions as preempted by ERISA (for both self-funded and insured plans) due to conflict with ERISA fiduciary obligations, as well as under the First Amendment.

While these provisions may seem like just a fraction of the statute, they are a linchpin to the rate-setting mechanisms (NADAC pricing and the dispensing fee) applicable solely to retail

pharmacies. These rate-setting mechanisms raise prices (and profit margins) at retail pharmacies in comparison to all other pharmacies. If Plaintiffs can discuss the differential with plan participants and beneficiaries (as their ERISA fiduciary duties would demand they do, and the First Amendment permits them to do), participants and beneficiaries will then know the financial and other benefits to them and their plans in seeking coverage through non-retail pharmacies (such as Walmart, CVS, Walgreens, etc.). They likely will fill their prescriptions at the cheaper sources, making the retail pharmacies the legislature sought to protect less appealing than before the legislation (when everyone's pricing was the same) and therefore injuring the very sector the legislature sought to protect. As Plaintiffs explained earlier, SF 383 is a house of cards; once these key provisions are removed (*i.e.*, deemed illegal, as they are), the rest tumbles. *See* ECF No. 9 (explaining that severing any non-preempted provisions will likely hurt rural pharmacies).

The Court can, therefore, ascertain that the legislature likely would *not* have enacted the severed statute because the remainder would undermine rather than further the legislature's original purpose. Ultimately, the question is "[w]ould the legislature have preferred what is left of its statute to no statute at all?" *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). Here, the Court can determine the legislature would have wanted no statute.

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM, AND THE BALANCE OF THE EQUITIES FAVORS PLAINTIFFS

On the equitable conditions for preliminary relief, the Commissioner does not dispute that Plaintiffs will suffer irreparable harm if SF 383 goes in force, except to accuse Plaintiffs of a "delay in suing [that] vitiates" the force of any irreparable-harm assertions. *See* Def.'s Br. at 44 (internal quotation marks and citation omitted). His accusation is factually inaccurate and also insensitive to the exigencies of private parties commencing litigation against the state. Plaintiffs brought this case less than two weeks after the Governor signed SF 383, and more than a week

before the statute's effective date.  In that time, they had to join forces to sue, secure counsel (specialized and local), and draft significant, detailed pleadings and motions.  Any urgency and timing difficulties in this case are *the state's* creation, not Plaintiffs', because of the legislature's insistence on an unreasonable effective date for SF 383 sixteen days after the statute became law.

The Commissioner argues (briefly) that the balance of harms tips in his favor because of the laudable purposes of the state law.  *See id.* at 45.  But ERISA and the First Amendment, as earlier noted, serve important objectives that, actually, override state considerations.  While the Commissioner proffers that plan sponsors might save money under the law because of pass-through pricing, *see id.* (citing Wiese Decl.), there is more reason to believe pass-through pricing would change the market little because of its prevalent use already in the market.  *See* Decl. of Paul Karow ¶¶ 8-11 (ECF No. 39-3).  And the Commissioner says absolutely nothing about the prospect of the specialized plan cost-sharing programs, which the Court emphasized in its TRO ruling, *see* TRO Order at 8, becoming inoperable as a result of SF 383, presenting serious potential injury to covered persons.

## III.   THE COURT SHOULD EXTEND RELIEF TO ALL PARTIES (INCLUDING ABI'S MEMBERS) AND THEIR CONTRACTORS AND OTHER AGENTS AND SHOULD CONTINUE TO DECLINE TO AFIX AN INJUNCTION BOND

As the Court recognized in its TRO decision, the Supreme Court's very recent decision in *Trump v. CASA, Inc*., Nos. 24A884, et al., 2025 U.S. LEXIS 2501 (U.S. June 27, 2025), restricts the extent of the injunction the Court may issue.  Under *CASA*, the Court may issue a preliminary injunction that affords "complete relief to each plaintiff with standing to sue," *id.* at *35, but not universal relief covering similarly situated non-parties.  Accordingly, should the Court issue a preliminary injunction, the injunction should award relief to all of the named parties, which,

under settled standing rules, *see* Compl. ¶ 17, includes the members of Plaintiff Iowa Association of Business and Industry ("ABI") whose interests it represents.

Of significance, *CASA* instructs that the relief afforded to Plaintiffs should be *complete relief – i.e.*, all that is necessary in order for them to obtain a meaningful remedy from the Commissioner's enforcement. *CASA*, 2025 U.S. LEXIS 3501, at *24-28. Here, in "fashion[ing] a remedy that awards complete relief" to Plaintiffs, *id.* at *24, the Court must enjoin the Commissioner from enforcing SF 383 not just against Plaintiffs (including ABI's members), but also from enforcing it against Plaintiffs' contractors and agents who assist in the administration of their health benefit plans, including their PBMs, who, again, are (under *Wehbi*) the "functional equivalent" of Plaintiffs themselves. Absent extension of the preliminary injunction to contractors and agents, the preliminary injunction would have little value, since it would permit the Commissioner to enforce SF 383 against the very entities that Plaintiffs utilize to administer the prescription drug benefits program in their plans. Should the Court issue a preliminary injunction, Plaintiffs will promptly provide to the Court a list of contractors and agents they (including ABI's members) currently utilize, so that the Commissioner fully knows the parties against whom he may not enforce SF 383.

Finally, the Court should adhere to its finding in the TRO Order that the case is inapt for an injunction bond. *See* TRO Order at 22-23. On that score, the Court's reasoning was sound, it followed precedent, and the Commissioner has provided no persuasive counter. He responds vaguely that rejecting a bond here would amount to "a *sub silentio* abrogation of Rule 65(c)," Def.'s Br. at 45, but fails to heed that the Court simply applied Rule 65(c)'s standard, and accompanying case law, as appropriate *to this case.*

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction.

July 9, 2025                     Respectfully submitted,

                                */s/ Ryan G. Koopmans*
                                Ryan G. Koopmans
                                KOOPMANS LAW GROUP, LLC
                                500 East Court Ave., Suite 420
                                Des Moines, IA  50309
                                Telephone:  (515) 978-1140
                                Email:  ryan@koopmansgroup.com

                                Anthony F. Shelley (*pro hac vice* admission)
                                Joanne Roskey (*pro hac vice* admission)
                                DeMario M. Carswell (*pro hac vice* admission)
                                MILLER & CHEVALIER CHARTERED
                                900 Sixteenth St., NW
                                Washington, DC  20006
                                Telephone:  (202) 626-5800
                                Email:  ashelley@milchev.com

                                *Counsel for Plaintiffs Iowa Association of Business and Industry,*
                                *Iowa Bankers Benefit Plan, Iowa Laborers District Council Health*
                                *and Welfare Fund, Des Moines Orthopaedic Surgeons PC, and*
                                *Iowa Spring Manufacturing & Sales Company*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Eric H. Wessan
Patrick C. Valencia
Iowa Department of Justice
1305 E. Walnut Street
Des Moines, IA 50319
515-823-9117 (E. Wessan)
515-281-8770 (P. Valencia)
Email: eric.wessan@ag.iowa.gov
Email: patrick.valencia@ag.iowa.gov

*Counsel for Defendant*


  */s/ Ryan G. Koopmans*
Ryan G. Koopmans